GUY C. BULLEN, Plaintiff-Appellant, *v.* MORRIS DEREGO, BER-NARD SHIGAKI, RAYMOND OLIVERA, and CITY AND COUNTY OF HONOLULU, Defendants-Appellees

NO. 10486

(CIVIL NO. 68548)

AUGUST 22, 1986

LUM, C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ.,
AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE
BURNS, IN PLACE OF WAKATSUKI, J., DISQUALIFIED

588

OPINION OF THE COURT BY NAKAMURA, J.

Claiming Police Officers Morris DeRego, Bernard Shigaki, and Raymond Olivera acted in concert to deprive him of "his right to due process of law" and "his right to compulsory attendance of a witness in his behalf at a criminal trial," Guy C. Bullen brought an action for damages against the officers and the City and County of Honolulu. The action was tried in the Circuit Court of the First Circuit, and the court granted the defendants' motion for a directed verdict at the close of the plaintiff's case. The plaintiff appeals, but we conclude from a review of the record and the applicable law that a directed verdict was in order.

I.

The plaintiff was arrested on March 31, 1976 for selling heroin to Morris DeRego, then an undercover member of the Honolulu Police Department. The transaction involved an intermediary, James Scott ("Jimbo"), who had been recruited as a government informer by Bernard Shigaki on a promise that criminal charges pending against him would be dismissed if he cooperated in the investigation of drug traffic in Waikiki. The transactions in which "Jimbo" actively participated led to the prosecution of the plaintiff and at least one other person, Michael Peter Stech. *See State v. Bullen,* 63 Haw. 27, 620 P.2d 728 (1980); *State v. Stech,* 63 Haw. 34, 620 P.2d 732 (1980).

On April 2, 1976, after charges against the informer were dismissed

at the instance of the Prosecuting Attorney, DeRego and another police officer escorted Scott to the Honolulu International Airport and gave him money to book passage from Hawaii. They watched as he stood in line to purchase a ticket but left the airport before he went to a boarding area. They did not attempt to ascertain his destination, and Scott's whereabouts are unknown.

As a consequence of the transaction involving DeRego, Scott, and himself, Bullen was charged with Promoting a Dangerous Drug in the Second Degree in violation of Hawaii Revised Statutes (HRS) § 712-1242(1)(c). Prior to trial he unsuccessfully attempted to serve Scott with a subpoena commanding his appearance as a witness. Bullen then moved to have the government produce the informer or dismiss the prosecution, asserting he had been entrapped into committing the offense and Scott was a material witness. The motion was heard and denied by the circuit court.

Bullen was convicted on October 13, 1976 after a jury trial, and he appealed to this court. On December 9, 1980 we ruled that "[w]here the government chooses to employ an informer in its sponsored enterprise, it must be prepared to supply the defendant with information as to his whereabouts." *State v. Bullen,* 63 Haw. at 32, 620 P.2d at 731. "Although we [were] satisfied that the police did not act deliberately and intentionally to render Jimbo unavailable to the defendant," we nevertheless found "police conduct . . . made it impossible for the defendant to locate the police informant." *Id.* at 33, 620 P.2d at 731. Concluding that the circuit court erred in denying the motion seeking production of the informer or dismissal of the case, we vacated the judgment of conviction and remanded the case for a new trial. And we ruled "the government must either produce Jimbo or risk dismissal of the indictment." *Id.,* 620 P.2d at 732. The government chose to dismiss the indictment.

The instant civil rights suit was brought a year later. The gravamen of Bullen's complaint consisted of averments that DeRego, Shigaki, and Olivera "unlawfully denied Plaintiff the right to obtain testimony at his trial from a material witness" and as a consequence he "was denied his right to due process of law" and "his right to compulsory attendance of a witness in his behalf at a criminal trial." Bullen further alleged the officers acted "under color of rules, regulations, directives, customs, usages, and/or practices of the CITY AND COUNTY OF HONO-LULU and statutes of the State of Hawaii" and as a result he "was denied his civil rights in violation of 42 U.S.C. §§ 1983, *et seq.,* and

Article I, § 2 of the Constitution of the State of Hawaii." He sought damages for "the loss of his liberty for extended periods of time," for "the loss of income and wages," and for "severe emotional and mental distress," as well as punitive damages, from the police officers and from the City and County of Honolulu.

The action was tried to a jury in November of 1984. At the close of plaintiff's case, the defendants moved for a directed verdict. Finding the officers were "entitled to [a] qualified good-faith immunity defense based upon their reasonable reliance on legal advice and because the state of the law was unclear when Jimbo Scott left the jurisdiction" and the plaintiff's claims were "barred by the statute of limitations, Hawaii Revised Statutes Section 657-7 in particular," the circuit court granted the motion.[1] The plaintiff appeals, but we are convinced from a review of the record that the circuit court did not err in directing a verdict in favor of the defendants.

## II.

### A.

The plaintiff characterizes his claims against the defendants as "constitutional and civil rights claims" which accrued on December 9, 1980 when we issued our decision in *State v. Bullen, supra.* More particularly, he maintains he has a cause of action against them because they "unlawfully denied [him] the right to obtain testimony at his trial from a material witness." In essence, he asserts claims premised on the Sixth Amendment to the Constitution of the United States and article I, section 14 of the Constitution of the State of Hawaii.[2] That Guy C.

---

[1] The defendants had moved earlier for leave to amend their responsive pleadings to indicate their reliance on the applicable limitation statute as an affirmative defense. The pre-trial motion was denied. But when the motion was renewed at the close of plaintiff's case, the trial court allowed the defendants to amend their answer.

[2] The Sixth Amendment reads:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; *to have compulsory process for obtaining Witnesses in his favor,* and to have the Assistance of Counsel for his defence.

Bullen was denied "the right to obtain the testimony of witnesses and to compel their attendance" was, of course, settled in 1980. *Id.* at 29, 620 P.2d at 729. But in the circuit court's view the defendants were nonetheless immune from suit in the particular circumstances because of a "reasonable reliance on legal advice and because the state of the law was unclear when [the witness] left the jurisdiction." True, *State v. Bullen* was a case of first impression in the annals of this court, and we found "the police did not act deliberately and intentionally to render [the witness] unavailable." *Id.* at 33, 620 P.2d at 731. Still, we think there was a more compelling reason for the direction of a verdict in favor of both the individual defendants and the City and County of Honolulu—the independent judgment of a judicial officer of the State broke the "chain of causation" of the harm for which damages were sought.

B.

As we observed, Bullen's claims for damages are premised on a denial of a "right to obtain testimony" from a material witness. "The principal issue on appeal [in *State v Bullen* was] whether the trial court erred in denying the defendant's motion for production of James Scott, also known as Jimbo, . . . or, in the alternative, for dismissal of the indictment." *State v. Bullen,* 63 Haw at 28, 620 P.2d at 729. Viewing "[t]he right of the accused to present matters in his defense [as] fundamental[]," *id.* at 29, 620 P.2d at 729, we held the trial judge should have ordered the government to "either produce Jimbo or risk dismissal of the indictment." *Id.* at 33, 620 P.2d at 732.

While "qualified immunity represents the norm" for "executive officials in general," *Harlow v. Fitzgerald,* 457 U.S. 800, 807 (1982), a judge

---

(Underscoring added). And article I, section 14 of the Hawaii Constitution (1984) reads.

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed, which district shall have been previously ascertained by law, or of such other district to which the prosecution may be removed with the consent of the accused; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against the accused: *to have compulsory process for obtaining witnesses in the accused's favor;* and to have the assistance of counsel for the accused's defense. Juries, where the crime charged is serious, shall consist of twelve persons. The State shall provide counsel for an indigent defendant charged with an offense punishable by imprisonment.
(Underscoring added)

"is immune from liability for damages for his role" in a criminal prosecution. *Pierson v. Ray,* 386 U.S. 547, 553 (1967).[3] "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction[.]" *Id.* at 553-54. "[T]his settled principle of law was [not] abolished by [42 United States Code (U.S.C.)] § 1983[.]" *Id.* at 554. And in the Supreme Court's opinion "the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties[,]" *Imbler v. Pachtman,* 424 U.S. 409, 422-23 (1976), "likewise countenance absolute immunity [for prosecutors] under [42 U.S.C.] § 1983." *Id.* at 424.

In *Smiddy v. Varney,* 665 F.2d 261 (9th Cir. 1981), *cert. denied,* 459 U.S. 829 (1982), the plaintiff filed a section 1983 suit against the investigating police officers after a murder charge against him was dismissed for lack of evidence. Alleging his civil rights had been violated, he sought damages for the arrest and incarceration. He was awarded a substantial sum as damages, and the defendants appealed. The Court of Appeals for the Ninth Circuit held the "[f]iling of a criminal complaint immunize[d] [the] officers . . . from damages suffered [after the filing of the criminal complaint] because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for [the] accused's arrest exist[ed] at that time." *Id.* at 266. The filing of charges, the court went on to say, "break[s] the chain of causation between an arrest and prosecution." *Id.* at 267 (citations omitted).

---

[3]The considerations supporting judicial immunity were expressed in these terms by the Supreme Court:

This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (*Scott v. Stansfield,* L.R. 3 Ex. 220, 223 (1868), quoted in *Bradley v. Fisher,* [13 Wall. 335], 349, note, at 350 [1872].) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.
*Pierson v. Ray,* 386 U.S. at 554.

The plaintiff in *Ames v. United States,* 600 F.2d 183 (8th Cir. 1979), brought an action under the Federal Tort Claims Act against a host of defendants, including several employees of the Department of Justice, alleging abuse of process, false arrest, false imprisonment, and malicious prosecution. The complaint was dismissed, and the plaintiff appealed. In affirming the dismissal of the plaintiff's claims against the employees of the department, the Court of Appeals for the Eighth Circuit ruled that in the absence of "any specific allegation, such as the presentation of false evidence or the withholding of evidence, the grand jury indictment [broke] any chain of causation linking the employees' activities to the criminal proceedings, thus insulating the F.B.I. and Justice Department employees from tort liability." *Id.* at 185 (citations omitted).

Here, the trial court was fully apprised of the circumstances surrounding Scott's departure from Hawaii. Moreover, a specific plea had been addressed to the court that the criminal proceedings be terminated if the government could not provide compulsory process to secure Scott's testimony. In the judge's estimation, however, Bullen was not entitled to such remedy. Concluding from a review of the record that Bullen's motion should have been granted, we corrected the trial judge's error. But the judge was absolutely immune from tort liability for damages flowing from the error. Under these circumstances we would have to say the police officers and the City and County of Honolulu were insulated from tort liability because the chain of causation of the harm occasioned by the constitutional violation was broken by the independent judgment of a judicial officer. *Cf. Smiddy v. Varney, supra; Ames v. United States, supra; Dellums v. Powell,* 566 F.2d 167, 192-93 (D.C. Cir. 1977), *cert. denied,* 438 U.S. 916 (1978) (Chain of causation between arresting officer and filing of informations against arrestees would be broken, and thus defeat tort liability of the officer for malicious prosecution, if decision made by prosecutor to file informations was independent of any pressure or influence exerted by the officer and of any knowing misstatements which the officer may have made to him.); *Rodriguez v. Ritchey,* 556 F.2d 1185, 1193 (5th Cir. 1977), *cert. denied,* 434 U.S. 1047 (1978) (If facts supporting arrest are put before intermediate such as magistrate or grand jury, intermediate's decision breaks causal chain and insulates party initiating arrest from liability for false arrest.).

Although the circuit court directed a verdict in favor of the defen-

dants on other grounds, it still reached a correct result. We therefore affirm the judgment of the circuit court. *State v. Mueller,* 66 Haw. 616, 630, 671 P.2d 1351, 1360 (1983); *Agsalud v. Lee,* 66 Haw. 425, 430, 664 P.2d 734, 738 (1983); *Hawaii Carpenters' Trust Funds v. Aloe Development Corp.,* 63 Haw. 566, 578, 633 P.2d 1106, 1113 (1981).

*Eric A. Seitz,* Attorney at Law, and *Norman K. K. Lau (Radius & Lau,* of counsel) for appellant.

*James R. Aiona, Jr.,* Deputy Corporation Counsel, for appellees.