**STATE OF HAWAII**, Plaintiff–Appellee, v. **KYLE MORIWAKI**, Defendant–Appellant

NO. 13697

(CR. NO. 88–0082)

MAY 1, 1990

LUM, C.J., PADGETT, HAYASHI, AND
WAKATSUKI, JJ., AND RETIRED JUSTICE
NAKAMURA, IN PLACE OF MOON, J., RECUSED

OPINION OF THE COURT BY HAYASHI, J.

Defendant–Appellant Kyle Moriwaki (Defendant) was initially indicted for second degree murder in violation of Hawaii Revised Statutes (HRS) § 707–701.5 for the stabbing death of Jonathan Meyer (Meyer). A jury subsequently found Defendant guilty of the lesser offense of manslaughter due to extreme mental or emotional disturbance. See HRS § 707–702. The trial court thereafter sentenced Defendant to ten years of imprisonment and ordered him to pay restitution in the amount of $2,012.00 to Meyer's family and $3,834.82 to the Department of Human Services. We reverse.

## I.
## FACTUAL BACKGROUND

On the evening of December 30, 1987, Meyer went to visit his girlfriend, Saundra Moriwaki (Saundra), at the apartment she shared with Defendant, her brother. Saundra and Defendant were the only two eyewitnesses. Saundra testified that on the night in question Defendant had come to her room to discuss her plans to move out to live with Meyer. Saundra testified that Defendant was drunk and not making any sense, so she told him to go away.

Meyer, who had also been drinking but who did not appear intoxicated, arrived approximately twenty minutes later. Shortly after Meyer's arrival, Defendant reacted hostilely to something Meyer said. Feeling this tension was related to her earlier conversation with Defendant and not wanting anything to happen, Saundra suggested to Meyer that they go for a ride. As they were leaving, however, Defendant began taunting Meyer. Saundra's testimony as to the events that followed was less than clear.

Meyer responded angrily and pushed Defendant onto the couch. Following more pushing by both men, Defendant ended up on the kitchen floor. As Defendant got up he grabbed a knife and

held it down by his thigh. Saundra testified that Meyer then went towards Defendant, who appeared surprised, and that they began scuffling. She stated that Meyer had his right hand on Defendant's neck and that she saw Defendant swing, but did not see the knife penetrate Meyer's body. She further testified that they were struggling and fell back on the sofa. At that point, Meyer had his right knee and weight on the Defendant's stomach, his right hand on Defendant's neck and his left hand holding Defendant's arm which held the knife.[1]

Saundra then took the knife away, and upon finding that Meyer was bleeding, she went to get help. When she returned, Meyer was still on top of Defendant and appeared to be choking him. Saundra got Meyer to let go of him. Defendant then attempted to help Meyer, and told him that he was sorry and that he was going to be all right. Saundra testified that there had been no prior animosity between Defendant and Meyer.

Defendant testified that he only remembered Meyer knocking him down on the kitchen floor. Seeing that Meyer was very angry, Defendant grabbed the knife to protect himself, thinking that Meyer would then back off. He testified that the next thing he knew Meyer was on top of him holding his neck and his arm holding the knife. Believing that Meyer was going to choke him to death, Defendant stabbed him slightly to try to get him to release his hold. Defendant testified that when Meyer began choking him harder and looked like he wanted to kill him, he stabbed him harder. Meyer then let go.

The medical examiner testified that Meyer had been stabbed twice, once fatally, and had died as a result of internal bleeding.

---

[1] At the time of the incident, Defendant was approximately 5'6" tall and weighed approximately 140 pounds. The medical examiner testified that Meyer was 6'6" tall and weighed 225 pounds, although other testimony indicated that Meyer was about 6'2" tall.

On November 1, 1988, a jury found Defendant guilty of manslaughter on the basis of extreme mental and emotional disturbance.

On November 14, 1988, Defendant filed a Motion to Set Aside the Verdict and for Judgment of Acquittal, or in the Alternative for a New Trial, asserting errors in the jury instructions and an insufficiency of the evidence. At the hearing on the motion, defense counsel also raised as grounds for a new trial newly discovered evidence and prosecutorial misconduct, and offered testimony by Saundra in support. The court denied the motion, and proceeded to sentence Defendant as stated above.

This timely appeal followed.

## II.
## REBUTTAL EVIDENCE OF
## VICTIM'S PEACEFUL CHARACTER

The prosecution presented two witnesses in rebuttal to testify to the character of Meyer: Wendy Meyer, Meyer's mother, and Larry Jones (Jones), father of Meyer's ex–girlfriend. Jones was not initially scheduled to be a witness at trial, but approached the prosecutor and indicated his desire to testify after having observed part of the trial. Defense counsel objected to these witnesses on the grounds that 1) Meyer's character had not been attacked; 2) there was no issue as to who was the first aggressor based on the evidence adduced at trial; and 3) even if such testimony was relevant, Jones had been in the courtroom during part of the trial, and therefore his testimony would violate the exclusionary rule, invoked by both parties at the outset of the trial. The court overruled the objections. Thereafter both Jones and Wendy Meyer testified to Meyer's height as about 6'2" and to the effect that when Meyer drank he became happy and not belligerent.

Hawaii Rules of Evidence (HRE) Rule 404(a)(2) authorizes the admission of evidence of the peaceful character of a homicide victim to rebut evidence that the victim was the first aggressor:

(a)   Character evidence generally.  Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, *except*:

. . . .

(2)   Character of victim.  Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]

HRE Rule 404(a)(2) (emphasis added).  Pursuant to HRE Rule 404(a)(2), therefore, when Defendant, in support of his defense of self-defense, offered evidence that Meyer was the first aggressor, the court clearly was authorized to allow the prosecution to introduce evidence of the victim's peaceful nature in rebuttal.  The record in fact reflects that the court based its ruling on HRE Rule 404(a)(2) in admitting the evidence.  Moreover, given that the lower court was presented with only two eyewitnesses, Defendant and his sister, whose accounts were often unclear, we do not find that the trial court erred in admitting the rebuttal testimony.

We also find no abuse of discretion with regard to the admission of Jones' testimony.  HRE Rule 615[2] provides for the exclusion of witnesses from the courtroom by court order "to prevent him from listening to testimony of other witnesses and then

---

[2] HRE Rule 615 states in pertinent part as follows:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.

'shaping' or fabricating his testimony accordingly." *State v. Leong*, 51 Haw. 581, 583, 465 P.2d 560, 562 (1970).

It is unclear whether Jones violated the court's exclusion order. He was not a scheduled witness at the time he observed part of the trial. We need not decide this issue, however, because even if his testimony was technically in violation of the rule, the appropriate sanction for the violation is left to the sound discretion of the trial court. *See Yoshitomi v. Kailua Tavern, Ltd.*, 39 Haw. 93 (1951); *Harkins v. Ikeda*, 57 Haw. 378, 557 P.2d 788 (1976); *see also* Commentary on HRE Rule 615. Generally, "noncompliance with a sequestration order under HRE Rule 615 does not require a new trial 'unless the court's decision to allow the allegedly tainted testimony was an abuse of discretion or resulted in prejudice to the defendant.'" *State v. Elmaleh*, 7 Haw. App. ___, ___, 782 P.2d 886, 890 (1989) (quoting *United States v. Prichard*, 781 F.2d 179, 183 (10th Cir. 1986)).

Jones testified that Meyer was approximately 6'2" tall and that he became happy and not violent when he drank, echoing the testimony of Wendy Meyer. It is unlikely that Jones' presence in the courtroom allowed him to better "shape" or fabricate such testimony, if that was in fact his intent. In light of the way in which the violation, if any, occurred, and given the nature of his testimony, we find that the lower court's decision to allow Jones to testify was neither an abuse of discretion nor prejudicial to Defendant.

## III.
## PROSECUTORIAL MISCONDUCT

At the hearing on Defendant's Motion to Set Aside the Verdict and for Judgment of Acquittal, or in the Alternative for a New Trial, Saundra testified that prior to testifying at trial she had told the prosecutor that a week before his death, Meyer had beat up a neighbor whom she believed had been looking in her bedroom window. Saundra testified that the prosecutor told her not to

mention it — to not make Meyer look bad. The State neither admits nor denies that Saundra was instructed not to talk about the incident during trial.[3]

The prosecution has a duty "'to seek justice, to exercise the highest good faith in the interest of the public and to avoid even the appearance of unfair advantage over the accused.'" *State v. Quelnan*, 70 Haw. 194, 198, 767 P.2d 243, 246 (1989) (quoting *State v. Miller*, 67 Haw. 121, 122, 680 P.2d 251, 253 (1984)). Accordingly, Hawaii Rules of Penal Procedure (HRPP) Rule 16(b)(2) requires disclosure, without request, of certain matters within the prosecution's possession, and states in pertinent part as follows:

> (2) **Disclosure Without Request of Matters Within Prosecution's Possession.** The prosecutor shall disclose to defense counsel the following material and information within the prosecutor's possession or control:
>
> . . . .
>
> (ii) any material or information which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce his punishment therefor.

HRPP Rule 16(c)(2) places a continuing duty to disclose on the parties:

> (2) **Continuing Duty to Disclose.** If subsequent to compliance with these rules or orders entered pursuant to these rules, a party discovers additional material or information which would have been subject to disclosure pursuant to this Rule 16, he shall promptly notify the other party or his counsel of the existence of such additional material or information, and if the additional material or

---

[3] The State apparently has not attempted to confirm nor disaffirm Saundra's statement with the prosecutor in question, who has since left the Prosecutor's Office.

information is discovered during trial, the court shall also be notified.

HRPP Rule 16(e)(8) concerns the sanctions for failure to comply with Rule 16 and provides in pertinent part as follows:

> (8) **Sanctions.**
>
> (i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or any order issued pursuant thereto, the court may order such party to permit the discovery, grant a continuance, or it may enter such other order as it deems just under the circumstances.

In exercising its "broad discretion as to sanctions, the trial court should take into account the reasons why the disclosure was not made, the extent of prejudice, if any, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *State v. Marzo*, 64 Haw. 395, 397, 641 P.2d 1338, 1340 (1982) (citing Wright, *Federal Practice & Procedure* § 260).

In the instant case, Defendant, in accordance with Rule 16(e)(8), brought to the court's attention the prosecutor's failure to disclose a known incidence of violence by Meyer. Clearly, evidence that Meyer had been in a fight a week before his death was material to Defendant's claim of self–defense, in that it would tend to negate the evidence offered by the prosecution that Meyer was a non–violent person. Accordingly, the prosecutor had a duty to disclose her knowledge of that incident of violence, and we hold that the failure to make such a disclosure violated HRPP Rule 16(b)(2)(ii). Furthermore, given that Saundra's testimony was often unclear and that Defendant's testimony clearly supported his claim of self–defense, we find that the violation substantially prejudiced Defendant's defense.[4]

---

[4] The prosecutor's violation of HRPP Rule 16 was made more egregious because the prosecutor, according to Saundra's unrefuted hearing testimony, deliberately suppressed that information by instructing Saundra not to mention it.

As this violation was discovered after completion of trial and after entry of judgment against Defendant, the only remedy available to cure the prejudice to Defendant is the granting of a new trial. *See State v. Sugimoto*, 62 Haw. 259, 614 P.2d 386 (1980) (prosecutorial misconduct is not grounds for reversal unless it prejudices the defendant so as to deny him a fair trial).

Furthermore, the prosecutor's misconduct also violated Defendant's right to a fair trial guaranteed by the fifth and fourteenth amendments of the United States Constitution and article 1, section 5 of the Hawaii State Constitution. *See Brady v. Maryland*, 373 U.S. 83 (1963). "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. at 87; *State v. Marzo*, 64 Haw. 395, 641 P.2d 1338 (1982); *State v. Kaiu*, 5 Haw. App. 350, 692 P.2d 1166 (1984). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 676 (1985).

In this case, the evidence suppressed had possible exculpatory value, and therefore there is at least a reasonable probability that had this evidence been offered, the outcome of this case would have been different. The State's suppression of this evidence, therefore, violated Defendant's due process rights under *Brady*. The underlying principle "is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady*, 373 U.S. at 87.

## IV.
## TRANSCRIPTION OF CLOSING ARGUMENTS

Defendant further maintains that it was error for the court to refuse Defendant's timely request for the recording of closing arguments. Defendant contends that as defense counsel objected to a portion of the prosecutor's rebuttal argument, and because no record exists of what precise statement counsel objected to, this court should presume that the trial court committed reversible error in overruling the objection.

HRS § 606–12 provides in pertinent part as follows:

> **Duties of reporters.** The duties of each court reporter shall be to attend upon the court and write down all the testimony of witnesses in shorthand, together with the proceedings and objections of counsel, exclusive of argument, the rulings of the court, charge to the jury, and any other matter which the court may require the reporter to report.

Although HRS § 606–12 does not require the recording of argument, we now hold that where a party makes a timely request, the trial court must order that closing argument be recorded. *Cf. State v. Molitoni*, 6 Haw. App. 77, 711 P.2d 1303 (1985). Without a transcription of closing argument, a defendant's ability to fully challenge potentially prejudicial statements made by the prosecutor is severely compromised.

Due to our reversal for prosecutorial misconduct, we need not address Defendant's remaining contentions. Defendant's conviction is vacated and the case is remanded for a new trial.

*Judd R. Scott*, Deputy Public Defender, for Defendant–Appellant.

*Vickie L. Silberstein*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.