873 P.2d 98

**Isaiah D. REED, Carol E. Moses, Plaintiffs–Appellants,**

v.

**CITY AND COUNTY OF HONOLULU; Steven Alm, Defendants–Appellees,**

and

**John Does 1–9, Defendants.**

**No. 16918.**

Supreme Court of Hawai'i.

May 13, 1994.

---

Eric A. Seitz (Edie A. Feldman, with him on the briefs), Honolulu, for plaintiffs-appellants.

Hazel G. Beh (Milton S. Tani, with her on the brief), Deputies Corp. Counsel, City & County of Honolulu, Honolulu, for defendants-appellees.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Plaintiffs-appellants Isaiah Reed and Carol Moses (collectively, appellants) appeal from the circuit court's grant of summary judgment in favor of defendants-appellees City and County of Honolulu (the City) and Steven Alm, deputy prosecuting attorney (collectively, the prosecution). Appellants, having been arrested on complaints charging robbery, burglary, and assault, were committed to the circuit court for further proceedings following a district court preliminary hearing that determined probable cause. Unable to post bail, appellants remained incarcerated until the charges were dismissed without prejudice when the prosecution failed to produce the complaining witness at the criminal trial.[1] Appellants subsequently brought this civil action against the City and Alm, in his official capacity, asserting deprivation of their civil rights, in violation of 42 U.S.C. § 1983 (§ 1983), as well as the common law claims of false arrest, false imprisonment, and malicious prosecution. The prosecution successfully moved for summary judgment

---

1. Appellants were incarcerated from July 27, 1988, the date of their arrest, to December 28, 1988.

on all claims, asserting the defenses of (1) absolute immunity with respect to the § 1983 claim, and (2) judicial determination of probable cause with respect to the common law claims. Appellants timely appealed. We affirm.

## I. BACKGROUND

On July 27, 1988, appellants were arrested and charged with robbery, burglary, and assault. At the district court preliminary hearing on August 2, 1988, the complaining witness/victim, "Wesley Jackson," [2] testified regarding appellants' forced entry into his apartment and the ensuing robbery and assault. Based upon Jackson's testimony, the district court ruled that there was probable cause that Reed committed first degree robbery and first degree burglary and that Moses committed first degree robbery, second degree assault, and second degree theft.

The district court judge set bail at $70,-000.00 for Reed and $75,000.00 for Moses, and committed appellants to the circuit court for further proceedings. In response, appellants requested to be released on their own recognizance, supervised release, or reduced bail. The City, on the other hand, requested high bail for Reed, asserting that he posed a danger to the community. In denying appellants' request, the district court ruled that "with respect to the Class A [first degree robbery], the court doesn't have the authority to reduce bail. Inasmuch as the [c]ourt doesn't have the authority to reduce bail with respect to the Class A, the [c]ourt will not touch the other lesser offenses." Although bail was reduced to $10,000.00 for Reed and $8,000.00 for Moses at subsequent bail reduction hearings, appellants were unable to post the reduced bail amounts and remained incarcerated.

On September 21, 1988, Alm was assigned to prosecute appellants' case; trial had been set for the third week in December 1988. Alm testified by deposition that as a felony-team deputy prosecutor, his caseload was approximately thirty-five to forty felony cases at any given time, and therefore, time constraints would allow only a two month preparation period for an assigned case.

The record reflects that, at the time of assignment, Alm's file contained a post-preliminary hearing memorandum to the file submitted by the screening deputy prosecutor that read, in part: "Somehow, I think [the] trial [deputy prosecuting attorney] will have credibility problems with [Jackson]."

The record also reveals that during trial preparation, Alm had some indication that Jackson might not appear at the trial. Specifically, the record reflects: (1) a September 21, 1988 inter-departmental memorandum to file indicating that Jackson was "relocating to Boston"; and (2) a November 7, 1988 interdepartmental memorandum to Alm stating that Jackson's former employer did not know of Jackson's whereabouts and that Jackson had not picked up his last paycheck.

In November 1988, appellant moved to compel production of Jackson's criminal abstract, which the court, on December 1, 1988, ordered to be produced. The record is unclear as to when the abstract was actually produced; [3] however, it appears that the abstract was provided to defense counsel shortly before trial.

Despite the efforts of the prosecutor's office to locate Jackson, Alm's deposition testimony reveals "a couple of days before Christmas [he] got the investigative request back saying [the investigators] had looked all over the place ... but they were not able to locate [Jackson] as of the 23rd of December." According to Alm, he "called [defense counsel] and ... told him, '[y]ou might as well get the case called because there is no place we can go right now from here[.]'" Several days later the case was called for trial.

On December 28, 1988, the consolidated trial date, Jackson, as expected, did not appear. Appellants orally moved for dismissal *with* prejudice, asserting that the City could not proceed to trial without Jackson. The court denied appellants' motion to dismiss

---

2. Jackson had several different aliases—Wesley Smith, Lawrence Pettie, and Laurence L. Pettie.

3. According to a letter from deputy public defender Angie King to Alm, as of December 12, 1988, appellants still did not have a copy of the abstract.

*with* prejudice; however, the case was dismissed *without* prejudice and bail was set aside.

Appellants subsequently brought the instant suit averring that the attempted prosecution, which was based upon the testimony of a single, unreliable, and unavailable witness, resulted in a deprivation of their civil rights, in violation of 42 U.S.C. § 1983, as well as false arrest, false imprisonment, and malicious prosecution.[4] Appellants sought recovery of general, special, and punitive damages. The prosecution moved for summary judgment, asserting that: (1) the civil rights claims were barred by absolute immunity; and (2) the common law claims of false arrest, false imprisonment, and malicious prosecution were barred by the district court's determination of probable cause. In opposition, appellants argued that they were not contesting the judicial determination of probable cause; rather appellants contended that their claims for damages were based upon the misconduct that occurred thereafter by Alm's pursuit of a "doomed" prosecution and by the City's policy and custom of condoning such practice. On February 24, 1993, the circuit court granted summary judgment in favor of the prosecution and ordered all claims dismissed. Appellants timely appealed.

## II. *STANDARD OF REVIEW*

 On appeal, an order of summary judgment is reviewed under the same standard applied by the trial courts. Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 258, 861 P.2d 1, 6 (1993). Bare allegations or factually unsupported conclusions are insufficient to raise a genuine issue of material fact, and therefore, insufficient to reverse a grant of summary judgment. *Briggs v. Hotel Corp. of the Pacific*, 73 Haw. 276, 281 n. 5, 831 P.2d 1335, 1339 n. 5 (1992) (citing *K.M. Young & Assoc., Inc. v. Cieslik*, 4 Haw.App. 657, 658, 675 P.2d 793, 796 (1983)).

## III. *DISCUSSION*

As a threshold matter, we emphasize that appellants do not contest the preliminary hearing determination of probable cause and their commitment to the circuit court for trial. Instead, appellants take issue with the "undisputed erosion" of probable cause that occurred thereafter. Although appellants' brief is somewhat ambiguous, we assume that appellants' characterization of the "undisputed erosion" of probable cause is based upon the following: (1) the post-preliminary hearing internal memorandum concerning Jackson's "credibility" problems; (2) Jackson's criminal record and aliases; and (3) the memoranda alluding to Jackson's potential unavailability at trial.

Appellants argue that "once it became apparent that there was or would be insufficient evidence to sustain a conviction," the prosecution had a duty to alert appellants in order to avoid needless incarceration, citing Disciplinary Rule (DR) 7–103(B) of the *Code of Professional Responsibility* (1970). DR Rule 7–103(B)[5] states in pertinent part that "[a] public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant ... of the existence of evidence ... that tends to *negate the guilt of the accused*, mitigate the degree of the offense, or reduce punishment." (Emphasis added.) Appellants submit that the steadfast pursuit of a "doomed" prosecution and repeated refusals to disclose

---

4. In their first amended complaint, appellants alleged that the prosecution infringed the constitutional rights guaranteed them by the fourth, fifth, eighth, and fourteenth amendments to the United States Constitution, and article I, §§ 2, 5, and 7 of the Constitution of the State of Hawai'i, in violation of 42 U.S.C. § 1983, *et seq.*

 Additionally, appellants made claims for emotional distress; however, appellants did not raise that issue at summary judgment. Therefore, we will not address it here.

5. DR Rule 7–103(B) has been superceded by Rule 3.8(b) of the *Hawai'i Rules of Professional Conduct* (1994), which states in pertinent part: "A public prosecutor or other government lawyer shall ... make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense[.]"

"exculpatory evidence" constituted a breach of that duty, resulting in violations of appellants' civil rights, pursuant to 42 U.S.C. § 1983,[6] false arrest, false imprisonment, and malicious prosecution.

■ Relying on the definition of "exculpatory evidence" in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), appellants apparently believe that "evidence that 'Wesley Jackson' was not who he said he was, was not a credible witness [presumably based upon his criminal record], and would not appear for [a]ppellants' trial" constitutes exculpatory evidence. *Brady,* however, defines "exculpatory evidence" as "evidence favorable to an accused ... where the evidence is *material either to guilt* or to punishment[.]" *Id.* at 87, 83 S.Ct. at 1196–97 (emphasis added); *see also State v. Moriwaki,* 71 Haw. 347, 356, 791 P.2d 392, 397, *reconsideration denied,* 71 Haw. 665, 833 P.2d 900 (1990); *State v. Matafeo,* 71 Haw. 183, 185–86, 787 P.2d 671, 672 (1990). "Evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the *result* of the proceeding would have been different.' " *Moriwaki,* 71 Haw. at 356, 791 P.2d at 397 (emphasis added). Here, the appellants' criminal case was dismissed and, therefore, the allegedly withheld evidence, even assuming it was exculpatory, would not have changed the result of the proceeding.

■ Moreover, we disagree with appellants' characterization that the aforementioned evidence, including the criminal abstract, constitutes exculpatory evidence. Jackson's criminal record would have been relevant and admissible solely on the issue of his credibility and only if it was determined that the prior convictions involved crimes of dishonesty.[7] *See* Hawai'i Rules of Evidence 609 (evidence that witness has been convicted of a crime is inadmissible except when crime

is one involving dishonesty); *see also Asato v. Furtado,* 52 Haw. 284, 293, 474 P.2d 288, 295 (1970) (admission of evidence of prior convictions should be limited to those convictions that are relevant to the issue of truth and veracity). Additionally, we fail to see how the post-preliminary hearing memoranda constitute "evidence" that could have negated appellants' guilt.

### A. Civil Rights Violations

Appellants contend that "the prosecutor's actions and inaction[s] *after* the preliminary hearing ... render[s] [Alm and the City] liable for causing two innocent persons to be incarcerated for several months on charges for which they never would be tried or convicted." (Emphasis in original.) Although not specifically argued, we presume that appellants are asserting that their "liberty interests" were offended, in violation of § 1983. As noted previously, the prosecution has asserted the defense of absolute prosecutorial immunity with respect to the § 1983 claim.

#### 1. Prosecutorial Immunity

■ The law is well-settled that "a prosecutor enjoys absolute immunity from § 1983 suits for damages when he [or she] acts within the scope of his [or her] prosecutorial duties." *Imbler v. Pachtman,* 424 U.S. 409, 420, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976); *accord Bullen v. Derego,* 68 Haw. 587, 724 P.2d 106 (1986); *but cf. Orso v. City & County of Honolulu,* 56 Haw. 241, 534 P.2d 489 (1975) (in a tort claim based upon Hawai'i state law, as opposed to § 1983, a prosecutor is not absolutely immune from liability for his or her tortious conduct).

[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his [or her] role as an advocate for the [s]tate, are entitled to the protec-

---

**6.** Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**7.** The record reflects that Jackson was arrested and/or convicted on the mainland for assault, disorderly conduct, grand larceny, harassment, resisting arrest, robbery, armed robbery, and possession of illegal narcotics.

tions of *absolute immunity* [in a suit based on § 1983]. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Buckley v. Fitzsimmons,* —— U.S. ——, ——, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993) (emphasis added). Accordingly, absolute immunity extends to those prosecutorial activities that are "quasi-judicial," that is, those activities intimately associated with the judicial phase of the criminal process. *Imbler,* 424 U.S. at 430, 96 S.Ct. at 995.

▪ However, for activities performed at the investigatory stage of the prosecution, the prosecutorial immunity, raised as a defense in § 1983 suits, is not absolute, but only qualified. *Buckley,* —— U.S. at ——, 113 S.Ct. at 2616. Prior to a determination of probable cause, prosecutorial actions are generally investigative in nature because at that inchoate stage of the prosecution, a prosecutor's duties are akin to "investigative functions normally performed by a detective or police officer." *Id.* For example, when "a prosecutor plans and executes a raid on a suspected weapons cache, he [or she] 'has no greater claim to complete immunity than activities of police officers allegedly acting under his [or her] direction.'" *Id.* (citations omitted).

▪ Although distinguishing an investigatory act from one that is performed in preparation for trial may be difficult, "[t]here is a difference between the [prosecutor's] role in evaluating evidence and interviewing witnesses as he [or she] prepares for trial, on the one hand, and [his or her] role in searching for clues and corroboration that might give him [or her] probable cause to recommend that a suspect be arrested, on the other hand." *Id.*

In the present case, the investigation ended upon the presentation of evidence to the district court for its determination of probable cause, setting of bail, and commitment of appellants to circuit court. The prosecutorial misconduct that allegedly occurred *thereafter* related unquestionably to trial preparation and not investigation. Consequently, with respect to appellants' § 1983 claims against Alm, we hold that the trial court's grant of summary judgment was proper because Alm's absolute prosecutorial immunity protects him from § 1983 liability.

▪ We turn now to appellants' § 1983 claim against the City. Initially, we note that the language of § 1983 provides that "[e]very *person* who ... subjects, or *causes to be subjected,* any citizen ... to the deprivation of any rights ... secured by the Constitution ... shall be liable to the party in an action at law[.]" 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court, in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), held that municipalities and local governments are "persons" under § 1983, stating:

> Congress intend[ed] municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued *directly* under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional, implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

*Id.* at 690–91, 98 S.Ct. at 2035–36 (emphasis added).

Relying on *Monell,* appellants essentially contend that Alm's handling of the criminal prosecution against them demonstrates the policies and practices of the City's Office of the Prosecuting Attorney which resulted in the deprivation of their civil rights.

▪ It is well-settled that, under the doctrine of *respondeat superior,* an employer is held accountable and liable for the negligent acts of its employees; if an employee is immune from suit, then the employer is also immune from suit and cannot be held liable. *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61–62, 647 P.2d 713, 716 (1982). However, as explained in *Monell,* "the fact that Congress did specifically provide that A's [ (Alm's) ] tort became B's [ (the City's) ] liability if B [ (the City) ] 'caused' A [ (Alm) ] to

subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent." *Monell,* 436 U.S. at 692, 98 S.Ct. at 2036 (citation omitted). "When Congress' rejection of the only form of vicarious liability presented to it is combined with the absence of any language in § 1983 which can easily be construed to create *respondeat superior* liability, the inference that Congress did not intend to impose such liability is quite strong." *Id.* at 692–93 n. 57, 98 S.Ct. at 2037 n. 57.

Therefore, we conclude, as did the Court in *Monell* that

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,[8] inflicts the injury that the government as an entity is responsible under § 1983.

*Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

■ Accordingly, because the doctrine of *respondeat superior* is inapplicable in the context of § 1983 claims, Alm's absolute prosecutorial immunity does not relieve the City of liability based upon allegations that its policies and customs are responsible for a deprivation of rights protected by the Constitution.

### 2. The City's Liability Based on Its Alleged Policy and Custom

In the present case, appellants apparently argue that their "liberty interests" were offended when they were "incarcerated for one moment longer than was absolutely necessary" as a result of the City's practice of (1) not screening its cases, (2) opposing bail reduction and supervised release, and (3) ignoring the unavailability of its only witness.

■ First, appellants maintain that "it was and still is the policy and practice of the Office of the Prosecuting Attorney *not* to screen criminal cases until just before trial even when there is only the uncorroborated

testimony of a complaining witness." (Emphasis in original.) Appellants argue that such policy "clearly was a direct and proximate cause of appellants' unlawful incarceration." We reject this argument.

■ Preliminary hearings are designed to prevent prosecutorial abuse or neglect. "The primary purpose of a preliminary hearing is to ascertain whether there is reasonable ground to believe that a crime has been committed and whether there is just cause to believe the defendant committed it." 21 Am.Jur.2d *Criminal Law,* § 413, at 685 (1981).

> [T]he credibility of witnesses at a preliminary hearing is a proper consideration for the judge ... in determining probable cause. [Moreover], the credibility of witnesses at the preliminary [hearing] is a question of fact within the province of the committing [judge] to determine and neither the trial court nor an appellate court may substitute its judgment for his [or hers] on such question.

*Id.* at 684.

■ Jackson testified at the preliminary hearing and was cross-examined by defense counsel. Based on that testimony, the district court ruled that probable cause existed and bound appellants over to the circuit court for trial. Once that determination was made, the City did not have a duty to further "screen" its case with regard to the issue of the credibility of its witness. Here, we emphasize the distinction between evidence that tests the credibility of a witness and exculpatory evidence such as a witness's false testimony. There is no question that the prosecution has a duty to screen for the latter. However, to accept appellants' argument that the prosecution has a duty to screen its cases subsequent to a court's determination of probable cause for any alleged deterioration of a witness's credibility would not only be unduly burdensome but untenable because such a duty would invade the province of the trier of fact. We hold that appellants' claim on this issue fails as a matter of law. ·

---

**8.** The record does not reflect any evidence that Alm, as deputy prosecutor, was authorized to implement official policy for the City or that his actions in the criminal prosecution "may fairly be said to represent official policy."

Appellants next argue that their unlawful incarceration was the result of the City's practice of "oppos[ing] bail reduction and supervised release motions even though the prosecutor's opposition thereto may result in the unwarranted and prolonged incarceration of innocent persons." We find this argument also to be without merit.

Appellants were afforded the opportunity for bail, which was eventually reduced by successful motions for bail reduction. Appellants take issue with the City's preliminary hearing request for high bail as to Reed, noting Reed's alleged "danger to the community." However, the amount of bail "rests in the discretion of the justice or judge." Hawai'i Revised Statutes (HRS) § 804–9 (1985). Appellants have failed to provide any support for their contention that Alm's request for high bail and his opposition to bail reduction constitutes an established policy or custom of indiscriminately opposing bail reductions. We note, even assuming *arguendo,* that opposing bail reduction can constitute a § 1983 violation, a judge's independent determination breaks the chain of causation or harm. Appellants' contention of the City's alleged practice of opposing bail reduction is factually unsupported by the record.

Finally, appellants claim they were unnecessarily incarcerated despite the "several early indications that [Jackson] would not appear for trial." Appellants maintain this violation resulted from the lack of a "practice or procedure in the Office of [the] Prosecuting Attorney to expedite trial preparations to avoid the needless confinement of presumptively innocent persons." Citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), appellants contend that "the absence of a policy and/or the failure to act to prevent [prosecutorial] misconduct by municipal officials is the equivalent of a policy [which] can render the [C]ity ... liable under 42 U.S.C. [§] 1983."

*City of Canton* involved violations of constitutional rights alleged by a woman during her detention by city police. She alleged that the city failed to adequately train its employees (the police officers) regarding the medical care to be taken of a detainee in order to prevent deprivation of her constitutional right, under the due process clause of the fourteenth amendment, "to receive necessary medical attention while in police custody." *Id.* at 381, 109 S.Ct. at 1201. She further alleged that this failure to train, in effect, perpetuated a custom or policy under color of state law, allowing for the continued deprivation of those rights. The United States Supreme Court held that "inadequacy of police training may serve as the basis for [the city's] § 1983 liability only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. at 1204 (emphasis added).

Applied here, in order to meet the "deliberate indifference" requirement proffered in *City of Canton,* the appellants must show that the City had notice that the practice of the prosecutor's office resulted in the needless or prolonged confinement of innocent persons in violation of § 1983 and yet deliberately or consciously allowed the violations to continue without implementing a corrective policy. *See id.* at 389–91, 109 S.Ct. at 1205.

The apparent source of appellants' § 1983 allegations is the following testimony by Alm at his deposition, wherein he stated:

The procedure we used at the time was two months before a case was set for trial ... we are responsible for filling out what's called a master calendar slip, [a] sheet of paper, just indicating when the trial is set and approximately how long it would last and who the defense counsel is.... That is usually a mark for me to, that after that sometimes I have to send out subpoenas. So, you know, for this as part of the ... regular case of things, I think I probably after that looked through the case as far as sending out subpoenas.

\* \* \* \* \* \*

With the number of cases that we end up working with ... my practice is to get out the subpoenas to try to follow up on locating everybody. The bulk of my time is spent doing the trials that are set for any particular week, or the next week, and I do as much preparation as I can as far as

getting prepared for trials that are two months or three months down the road, but much of my time is spent with either being in trial or getting ready for the trials that are coming up sooner.

(Emphasis added).

As stated previously, appellants contend that they were unnecessarily incarcerated because of the lack of a policy or procedure in the prosecutor's office to expedite trial preparations in order to avoid needless confinement of innocent persons. However, appellants have failed to prove that the practice as described by Alm, in fact, results in needless or prolonged incarceration and is therefore prohibitive. Appellants have also failed to prove that the policymakers of the City knew about this alleged prohibitive practice and yet deliberately and consciously failed to remedy it. The record is completely devoid of evidence that supports appellants' contention of the City's "deliberate indifference" to the rights of incarcerated defendants awaiting trial. As stated previously, factually unsupported conclusions are insufficient to raise a genuine issue of material fact.

■ Finally, the law is well established that where the defendant had an opportunity to cross-examine the trial witness at a preliminary hearing, the witness's preliminary hearing statement is admissible at trial if the witness is unavailable despite the good faith efforts of the prosecution to produce the witness. *California v. Green,* 399 U.S. 149, 165, 90 S.Ct. 1930, 1938–39, 26 L.Ed.2d 489 (1970). Consequently, even assuming that Alm had actual knowledge that Jackson would be unavailable at trial, such a turn of events would not have been necessarily fatal to the prosecution thereby precluding it from proceeding to trial.

Accordingly, we conclude that summary judgment in favor of the City regarding appellants' § 1983 claim was appropriate.

### B. *False Arrest, False Imprisonment, and Malicious Prosecution*

■ Because " 'a person who is falsely arrested is at the same time falsely imprisoned,' false arrest and false imprisonment as tort claims are 'distinguishable only in terminology.' " *Meyer v. City and County of*

*Honolulu,* 6 Haw.App. 505, 508, 729 P.2d 388, 391, *aff'd in part and rev'd in part on different grounds,* 69 Haw. 8, 731 P.2d 149 (1986) (citation omitted). "For both false arrest and false imprisonment, the essential elements are '(1) the detention or restraint of one against his [or her] will, and (2) the unlawfulness of such detention or restraint.' " *Id.* at 508–09, 729 P.2d at 392 (quoting 32 Am.Jur.2d *False Imprisonment,* § 2, at 59 (1982)). With respect to the tort of malicious prosecution, there are three essential elements: "(1) that the prior proceedings were terminated in the plaintiff's favor[;] (2) *that the prior proceedings were initiated without probable cause* [;] and (3) that the prior proceedings were initiated with malice." *Wong v. Panis,* 7 Haw.App. 414, 419, 772 P.2d 695, 699 (1989) (quoting *Myers v. Cohen,* 67 Haw. 389, 391, 688 P.2d 1145, 1148 (1984) (emphasis added)).

■ The determination of probable cause is a defense to the common law claims of false arrest, false imprisonment, and malicious prosecution. *House v. Ane,* 56 Haw. 383, 390–91, 538 P.2d 320, 325–26 (1975); *Towse v. State,* 64 Haw. 624, 635, 647 P.2d 696, 704 (1982); *see also McCarthy v. Mayo,* 827 F.2d 1310, 1317 (9th Cir.1987) (grand jury determination of probable cause bars malicious prosecution). In the present case, the effect of the independent determination of probable cause by the committing judge is not altered by the inability of the prosecution to produce the complaining witness at the time of trial. Because appellants do not contest the preliminary hearing determination of probable cause and their commitment to circuit court for trial, appellants' state tort claims for false arrest, false imprisonment, and malicious prosecution fail as a matter of law. Moreover, there is no indication in the record, nor do appellants allege, that the prosecution was *initiated* with malice. On the contrary, as previously noted, appellants contend that the "undisputed erosion" of probable cause that allegedly occurred *subsequent* to the preliminary hearing is the basis of their § 1983 and state tort claims.

Our review of the record indicates that appellants fail to cite to any persuasive or relevant authority in support of their conten-

tion that where the actions or inactions of the prosecutor subsequent to a preliminary hearing "erodes" probable cause, an action for false arrest, false imprisonment, or malicious prosecution arises. Because appellants have failed to raise any genuine issue of material fact, we conclude that summary judgment as to their state tort claims was properly granted.

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's grant of summary judgment in favor of Alm and the City.