143 P.3d 1

**Richard Sung Hong WONG, Mari Stone Wong, and Kathleen Wong, Plaintiffs–Appellants**

v.

**Benjamin CAYETANO, Earl I. Anzai, Margery Bronster, Thomas R. Keller, Lawrence A. Goya, Cynthia Quinn, Hugh R. Jones, Dorothy Sellers, Steve Goodenow, John Tsukiyama, Defendants–Appellees**

and

**John Does 1–25, Defendants.**

No. 27117.

Supreme Court of Hawai'i.

July 26, 2006.

Reconsideration Denied Aug. 28, 2006.

As Corrected Aug. 29, 2006.

Eric A. Seitz, Honolulu, and Lawrence I. Kawasaki, on the briefs, for plaintiffs-appellants Richard Sung Hong Wong, Mari Stone Wong, and Kathleen Wong.

David A. Webber and Deborah Day Emerson, Deputy Attorneys General, and Robert P. Richards and Michele–Lynn E. Luke (of Richards & Luke), Honolulu, on the briefs, for defendants-appellees Benjamin Cayetano, Earl I. Anzai, Margery Bronster, Thomas R. Keller, Lawrence A. Goya, and Cynthia Quinn.

Dorothy D. Sellers and Kimberly Tsumoto, Deputy Attorneys General, on the briefs, for defendants-appellees Hugh R. Jones and Dorothy Sellers.

DUFFY, Acting C.J., and Circuit Judges AHN, NISHIMURA, BORDER, and HARA, in place of MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ., respectively, recused.

Opinion of the Court by DUFFY, Acting C.J.

In this action for malicious prosecution, Plaintiffs–Appellants Richard Sung Hong Wong (Richard), Mari Stone Wong (Mari), and Kathleen Wong (Kathleen) [hereinafter collectively, the Wongs] appeal from the February 4, 2005 final judgment of the Circuit Court of the First Circuit [1] in favor of Defendants–Appellees Benjamin Cayetano, Earl I. Anzai, Margery Bronster, Thomas R. Keller, Lawrence A. Goya, and Cynthia Quinn [hereinafter collectively, Cayetano Group], and Defendants–Appellees Hugh R. Jones and Dorothy R. Sellers [hereinafter collectively, Jones Group, and collectively with the Cayetano Group, Defendants].[2]

On appeal, the Wongs assign a single point of error: that the circuit court erred in "determining that [the Wongs] did bring or should have brought their state malicious prosecution claims" in their prior federal court action. The Cayetano Group counters that: (1) the circuit court did not err in concluding that the Wongs' claims were barred by res judicata; (2) the judgment must be affirmed as against Kathleen based on the circuit court's unchallenged conclusion that she failed to state a claim upon which relief could be granted; (3) the judgment must be affirmed as against Richard and Mari based on the circuit court's unchallenged conclusion that their claims are barred by collateral estoppel; (4) the judgment must be affirmed as against Richard on the basis that he released his claims; and (5) the judgment must be affirmed in favor of Cayetano on the basis that the Wongs failed to raise a genuine issue of material fact. The

---

1. The Honorable Gary W.B. Chang presided over this matter.

2. On January 4, 2005, a stipulation for dismissal with prejudice of all claims against Defendants-

Appellees Steve Goodenow, and John Tsukiyama was filed. Inasmuch as Goodenow and Tsukiyama are thus appellees in name only, no further reference is made to them herein.

Jones Group similarly counters that: (1) the circuit court did not err in concluding that the Wongs' claims were barred by res judicata; (2) the judgment must be affirmed as against Kathleen based on the circuit court's unchallenged conclusion that she failed to state a claim upon which relief could be granted; (3) the judgment must be affirmed as against Richard and Mari based on the circuit court's unchallenged conclusion that their claims are barred by collateral estoppel; (4) the judgment must be affirmed as against Richard and in favor of the Jones Group based on the circuit court's unchallenged conclusion that he released his claims against them; and (5) the judgment must be affirmed in favor of the Jones Group on the basis that the Wongs failed to raise a genuine issue of material fact.

Based on the following, we affirm the circuit court's final judgment in favor of all Defendants.

## I. BACKGROUND

Disposition of the instant action requires consideration of a federal court action filed by Richard and Mari pursuant to 42 U.S.C. § 1983 alleging federal civil rights violations, as well as consideration of various civil and criminal proceedings instituted with respect to the Estate of Bernice P. Bishop (Bishop Estate) [3] and its trustees, of whom Richard was one. Accordingly, this opinion sets forth the background of each proceeding insofar as it is relevant to the instant case.[4]

### A. Civil Probate Proceeding

On September 10, 1998, then-Attorney General of the State of Hawai'i Bronster [5] filed a petition in the circuit court of the first circuit, sitting as a probate court *In re Estate of Bernice P. Bishop, Deceased,* First Circuit Equity No. 2048, alleging misconduct on the part of the five Bishop Estate trustees, including Richard, and seeking their surcharge and removal. Jones and Sellers were the deputy attorneys general assigned to litigate the petition. The Attorney General's office also began a criminal investigation, but established a "Chinese Wall" between the probate litigation team (including Jones and Sellers) and the team pursuing the criminal investigation (including Goya and Quinn).[6]

In the probate proceedings, the Attorney General cited the grand jury indictment against Richard as a ground for his removal as trustee. Richard's interim removal was effected on May 7, 1999. On October 12, 2000, the probate court approved a comprehensive settlement agreement terminating the probate proceedings [hereinafter, Settlement Agreement]. The Settlement Agreement was signed by Richard, and provided in relevant part as follows:

3. *Release of Surcharge Claims:* Subject to the exclusions and limitations set forth in this Agreement, including but not limited to those contained in Paragraphs 7 and 10 hereunder, the ATTORNEY GENERAL ... [and Richard] ... on their own behalf and on behalf of their respective Representatives,[7] hereby fully release, acquit and forever discharge each other and their respective Representatives from any and all claims, crossclaims, counterclaims and third-party claims (however denom-

---

3. Although the Bishop Estate was subsequently renamed as Kamehameha Schools, it is referred to herein by its former name.

4. In this connection, we note that the Cayetano Group requests that we take judicial notice of the records and files in related cases. *See Ranger Ins. Co. v. Hinshaw,* 103 Hawai'i 26, 29 n. 7, 79 P.3d 119, 122 n. 7 (2003) (noting that, where the record on appeal does not provide sufficient information, a court may take judicial notice of the record in a related case); *Roxas v. Marcos,* 89 Hawai'i 91, 110 n. 9, 969 P.2d 1209, 1228 n. 9 (1998) (same). However, we conclude in this case that the request is superfluous because the circuit court already took judicial notice of the records and files in related cases, *see* Section

II.D below, and the Wongs do not challenge the propriety of the circuit court's decision to do so. Accordingly, we consider the records and files of related cases as noticed below and made part of the instant record on appeal.

5. Bronster was replaced by Anzai after he was appointed by then-Governor Cayetano to succeed her as attorney general in July 1999.

6. Bronster, Keller, and later Anzai, allegedly supervised both teams.

7. "Representatives" is defined in the Settlement Agreement to include, *inter alia,* the named parties' "employees, attorneys, [and] agents."

inated), demands, obligations, actions, causes of action, liability or liabilities, surcharges, reimbursements or repayments, penalties, rights, damages, losses, interest, attorneys' fees, costs, expenses, and compensation of every kind and every nature whatsoever, whether in law or in equity, whether known or unknown, arisen, arising or to arise in the future and which concern or relate, directly or indirectly, to any or all of the following:

a. All claims asserted in the various petitions for removal and/or surcharge of one, more or all of the Former Trustees in Equity No. 2048 including, without limitation, the following: (i) the Attorney General's Response To Master's Consolidated Report On The 109th, 110th, And 111th Annual Accounts filed on or about September 9, 1998; (ii) that certain Petition of the Attorney General on Behalf of the Trust Beneficiaries to Remove and Surcharge Trustees, for Accounting, and for Other Equitable Relief filed on or about September 10, 1998; (iii) that certain Amended Petition Of The Attorney General On Behalf Of The Trust Beneficiaries To Remove and Surcharge Trustees, For Accounting, And For Other Equitable Relief filed on or about August 24, 1999; (iv) that certain Second Amended Petition of the Attorney General on Behalf of the Trust Beneficiaries to Remove and Surcharge Trustees, for Accounting, and for Other Equitable Relief filed on or about November 30, 1999 ("Surcharge Claims"); and (v) the Master's reports on the 109th, 110th, and 111th Annual Accounts.

b. All claims relating to, concerning, involving or arising out of the Surcharge Claims.

c. All claims, actions, or petitions (however denominated), which were or which could have been asserted, to remove the Former Trustees as

trustees of KAMEHAMEHA SCHOOLS, to seek the repayment by the Former Trustees to KAMEHAMEHA SCHOOLS of any and all compensations, payments and/or other benefits they may have received from KAMEHAMEHA SCHOOLS, and to surcharge the Former Trustees, individually and/or collectively, for any act, omission, decision or other conduct on his, her and/or their part as trustees of KAMEHAMEHA SCHOOLS prior to and including May 7, 1999.

On December 22, 2000, the probate court approved the parties' stipulated order of dismissal with prejudice.

## B. *Criminal Proceedings*

### 1. Criminal No. 99–0678: Theft, Perjury, Hindering Prosecution, and Conspiracy Charges against Richard and Mari

On April 12, 1999, the State of Hawai'i [hereinafter, the State] secured a grand jury indictment against Richard and Mari for theft (Richard), perjury (Richard), hindering prosecution (Mari), and criminal conspiracy (Richard and Mari), docketed as *State v. Wong*, Cr. No. 99–0678.[8] *State v. Wong*, No. 22671, 97 Hawai'i 512, 40 P.3d 914 (2002) (per curiam). This court summarized the indictment as follows:

In sum, the indictment alleged that [Richard], a trustee of the Bishop Estate . . ., manipulated the Estate into giving his brother-in-law, [Jeffrey] Stone, a "sweetheart deal" on what was called the Kalele Kai project and, in return, Stone secured for Richard and Mari Wong a sale price for their apartment that was $115,800 more than the apartment was worth. According to the State, the $115,800 was money that should have gone to the Estate and [Richard's] keeping of the money was a theft from the Estate. All of the other charges relate to the alleged theft or the investigation of it.

8. Jeffrey Stone was also indicted in Cr. No. 99–0678 and in Cr. No. 99–1502 (in which none of the Wongs was indicted, but which was consolidated on appeal with Cr. No. 99–0678), but reference to him is omitted except where relevant.

*Id.* at 514, 40 P.3d at 916. On or about June 16, 1999, the indictment was dismissed without prejudice on Richard and Mari's motion to dismiss for lack of probable cause and for prosecutorial misconduct. *Id.* at 515, 40 P.3d at 917.

On February 22, 2002, this court affirmed the dismissal, but with prejudice, due to prosecutorial misconduct in the grand jury proceedings. *Id.* at 526–28, 40 P.3d at 928–30. In affirming dismissal, this court observed:

> The State acted here in complete disregard of the attorney-client privilege and the rules of evidence. In doing so, the State deprived the defendants of a timely opportunity to raise the attorney-client privilege issue and to seek a preliminary judicial determination of it. In addition, the state improperly bolstered the testimony of a witness [Richard Frunzi] by wrongly presenting the testimony as privileged testimony within the crime fraud exception to the attorney client privilege[.]

*Id.* at 527, 40 P.3d at 929.

### 2. Criminal No. 99–2417: Perjury Charge Against Richard

On December 9, 1999, the State obtained a separate grand jury indictment against Richard for perjury in connection with the now-dismissed theft indictment, docketed as *State v. Wong,* Cr. No. 99–2417. On December 29, 2000, the circuit court entered a written order denying in part Richard's motion to dismiss the indictment. In relevant part, the order stated as follows:

1. While Defendant Wong alleged in his Motion to Dismiss Indictment that the Attorney General did not maintain his role as a "minister of justice" in this case, Defendant Wong did not prove, nor did the Court find that the Attorney General engaged in conduct that was contrary to his role as a "minister of justice" in this case.

 a. The Attorney General did not engage in a conflict of interest by concurrently pursuing a surcharge action against Defendant Wong in Equity No. 2048, and prosecuting the instant case. The Attorney General (AG) did not use the surcharge action brought in Probate Court under Equity No. 2048 to disadvantage Defendant Wong in the instant criminal case.

 (1) Neither the filing of a petition for removal of the former Kamehameha Schools Bishop Estate (KSBE) trustees on September 10, 1998, which, in part, alleged the receipt of kickbacks by Defendant Wong based on a transaction in which his brother-in-law, Defendant Stone, acquired the lease fee interest in a condominium project named "Kalele Kai" from KSBE, nor the fact that the former Attorney General, Margery Bronster, claimed in the probate action that the Kalele Kai transaction was a "sweetheart deal" for Defendant Stone, resulted in a conflict of interest. Neither allegation played any role in the presentation of evidence that led to the indictment of Defendants Wong or Stone in this case.

 (2) An effort by the AG's civil team to obtain information from Federal Insurance Company concerning the terms under which a Federal Insurance Company policy, paid for with KSBE funds, was providing reimbursement for the legal fees of the former KSBE trustees was not a conflict of interest. The AG's civil team had alleged as part of its surcharge petition in Equity No. 2048 that it was not proper to have KSBE funds expended to protect the former KSBE trustees for the misconduct that they had committed against KSBE. The discovery master appointed by the Probate Court, Clyde Matsui, did approve the receipt of a certain portion of the records sought by the AG's civil team from Federal Insurance Company. However, the AG's civil team has not received any of that information to date, nor is it now seeking that information. Therefore, Defen-

dant Wong failed to show how he has been prejudiced by the AG's civil team's attempt to obtain information from Federal Insurance Company concerning the legal work his defense counsel has performed.

. . . .

b. Nor did the Attorney General misuse the criminal process to improperly bolster the civil surcharge action brought by the Attorney General against the former trustees of KSBE.

(1) *There was no evidence to show that either the previous indictment or the present indictment brought against Defendant Wong was improperly motivated.*

(2) There was no evidence to prove that Richard Frunzi, Defendant Stone's former attorney, was "rewarded" by the State for his prior grand jury testimony by improperly compromising his past state tax liabilities. Furthermore, no evidence from, or testimony of Frunzi played any role in the instant proceedings.

(3) There was no evidence of there being any cross-over of information between the AG civil and criminal teams, in derogation of the "screening wall" that had been placed between the AG civil and criminal teams by the Attorney General to address any allegations of misuses of the criminal process, or vice versa.

(Emphasis added.) The indictment was subsequently dismissed, however, and the State appealed. On March 19, 2002, this court granted the State's motion to dismiss its appeal. *State v. Wong*, No. 23984 (Haw. Mar. 19, 2002) (unpublished order).

**9.** After succeeding Bronster as attorney general, Anzai was substituted as a party defendant with

**3. Criminal No. 01–1–0918: Perjury Charge Against Richard**

On April 19, 2001, the State obtained another grand jury indictment against Richard for perjury in connection with the same conduct and events alleged in the indictment in Cr. No. 99–0678, docketed as *State v. Wong*, Cr. No. 01–1–0918. On July 3, 2001, this indictment was dismissed over the State's objection, and the State appealed. On March 5, 2002, this court in No. 24454 approved the parties' March 1, 2002 stipulation to dismiss the State's appeal.

**C. *The Federal Action***

On June 28, 1999, shortly after the dismissal of the first criminal indictment, Richard and Mari filed a verified complaint against Keller, Bronster,[9] Quinn, Goya, Jones, and Sellers, in federal district court (docketed as *Wong v. Anzai*, CV No. 99–00464 ACK (D.Haw.)) under 42 U.S.C. § 1983 seeking injunctive, declaratory, and monetary relief based on alleged violations of the federal constitution and their civil rights. Specifically, the complaint alleged in relevant part as follows:

(1) This is an action for damages and to enjoin the Acting Attorney General of the State of Hawai'i, his agents, servants, employees, successors in office, and all persons acting in concert with them, from prosecuting and/or threatening to prosecute Richard Sung Hong Wong and/or Mari Stone Wong on state criminal charges in bad faith and solely for the purpose of obtaining an advantage in civil litigation which the Attorney General has pursued under color of state law.

(2) The claims asserted herein present a question of federal law thereby conferring jurisdiction upon the Court under . . . 42 U.S.C. Section 1983, *inter alia.* Any and all state law claims contained herein form part of the same case or controversy as give[s] rise to Plaintiffs' federal claims and therefore fall within

the consent of the parties.

the Court's supplemental jurisdiction pursuant to 28 U.S.C. Section 1367.

....

(12) Since 1993 up to and until recently [Richard] served as a Trustee of the [Bishop Estate].

(13) On or about August 7, 1998[,] Special Master Colbert Matsumoto filed the Master's Consolidated Report on the One Hundred Ninth, One Hundred Tenth, and One Hundred Eleventh Annual Account of the Trustees in the Probate Court of the First Circuit Court, State of Hawai'i, in the Matter of the Estate of Bernice P. Bishop, Deceased, Equity No. 2048.

(14) On or about September 9, 1998[,] Defendant Bronster filed the Attorney General's Response to the Master's Consolidated Report and requested the interim removal of all of the [Bishop Estate] Trustees who are found to be responsible for alleged breaches of trust.

(15) On or about September 10, 1998, Defendant Bronster, in her capacity as Attorney General for the State of Hawai'i, filed a petition in the Probate Court ... specifically alleging kickbacks and other financial improprieties and seeking the removal of all five [Bishop Estate] Trustees, *inter alia.*

(16) As relating to [Richard], Defendant Bronster has alleged in the State Probate Court that the [Bishop Estate's] decision, in 1995, to sell a leased fee interest in the Kalele Kai Condominium project to One Keahole Partners was a "sweetheart deal," was not in the best interest of [the Bishop Estate], and was based solely on the relationship between [Richard] and his brother-in-law, Jeffrey Stone, who was a principal in one of the entities purchasing the interest in Kalele Kai Condominium.

(17) Defendant Bronster has further alleged that in return for the aforementioned "sweetheart deal," Jeffrey Stone purchased [Richard and Mari's] condominium at an inflated price and sold [them] a house on preferential and/or discounted terms.

....

(19) [Richard and Mari] are informed and believe, and thereupon allege, that Defendants Keller, Quinn, Goya, Jones, Sellers, and certain of the Doe Defendants have worked with and/or for Defendant Bronster in connection with the aforementioned Probate Court proceedings and other matters related thereto.

(20) [Richard and Mari] are informed and believe, and thereupon allege, that during the course of their inquiry into matters relating to [Bishop Estate] the Defendants issued administrative subpoenas to compel testimony and the production of records and documents and thereupon conducted and recorded numerous interviews of witnesses.

(21) [Richard and Mari] are informed and believe, and thereupon allege, that based upon the testimony and records obtained through administrative subpoenas the Defendants convened state grand juries first in September, 1998, and again in January, 1999, to return a criminal indictment against [Richard and Mari] on April 12, 1999, for alleged theft offenses ....

(22) Although there is not and never has been any evidence to support any criminal indictment of [Richard and Mari], the Defendants intentionally, deliberately, and flagrantly misled the state grand jury and repeatedly committed professional misconduct in the grand jury proceedings to obtain an indictment solely for the purpose of using that indictment to their advantage in the aforementioned Probate Court litigation in which the Defendants seek the interim and permanent removal of [Richard] from his position as a [Bishop Estate] Trustee.

(23) In separate proceedings before two state Probate Court judges[,] the Defendants repeatedly have cited the indictment of [Richard] by a "neutral" grand jury as a ground for his removal as a [Bishop Estate] Trustee without the necessity for any further evidentiary hearing resulting, on May 7, 1999, in [Richard's] interim removal for a period of at least ninety days.

(24) On or about May 17, 1999, Defendants Keller, Jones, and Sellers issued and served a Probate Court subpoena for all of the correspondence, payments and other privileged records of the insurance company that has retained counsel to represent [Richard] in the aforementioned proceedings including his counsel in the pending criminal matter.

(25) On or about June 16, 1999, a state judge dismissed the aforementioned indictment charging [Richard and Mari] on the ground that the Defendants' misrepresentations and other actions before the grand jury tainted the proceedings and had the effect of denying [Richard and Mari] and fair and impartial determination of probable cause.

(26) On June 23, 1999, the Defendants issued and served subpoenas on [Richard and Mari] and other prospective witnesses compelling their appearance on June 29, 1999, before another grand jury at which time the Defendants will seek a further indictment of [Richard and Mari].

(27) [Richard and Mari] are informed and believe, and thereupon allege, that there is no legal or factual basis for convening another grand jury to indict [Richard and Mari] and that the Defendants are acting in bad faith.

. . . .

(33) [Richard and Mari] are informed and believe, and thereupon allege, that Defendants' threatened criminal prosecution of Richard and Mari constitutes bad faith and is a gross violation of Defendants' sworn duties and obligations as law enforcement officers. . . .

. . . .

(40) [Richard and Mari] are informed and believe, and thereupon allege, that Defendants Keller, Jones, and Sellers' issuance and service of a Probate Court subpoena for privileged records pertaining to [Richard's] legal representation in pending criminal proceedings constitutes a deliberate, unethical, and illegal invasion of the attorney-client relationship. . . .

After the defendants filed a motion to dismiss or for summary judgment, Richard and Mari filed a memorandum in opposition on September 7, 1999, in which they characterized their complaint as, *inter alia*, seeking damages "for serious and continuing violations of [their] civil rights and malicious prosecution[.]" On October 8, 1999, the district court dismissed Richard and Mari's claims for injunctive and declaratory relief, and stayed their claims for money damages under section 1983 pending resolution of the state probate and criminal matters. On March 29, 2002, after the dismissal of all criminal indictments was final, the district court lifted the stay and allowed the parties to file supplemental briefs "further defining the remaining issues and discussing any court decisions that have been entered in the interim."

On April 30, 2002, Richard and Mari filed a memorandum supplementing their opposition to dismissal and/or summary judgment. Therein, they requested that, if the court were to grant the defendants' motion, they be "given leave to file an amended complaint alleging with greater specificity the events described herein which have occurred since the complaint initially was filed." On June 27, 2002, the district court granted summary judgment against Richard and Mari on their claims for money damages, holding that the defendants were entitled to absolute immunity in their capacity as administrative agency attorneys and prosecutors. No leave to replead was granted. On May 24, 2004, the United States Court of Appeals for the Ninth Circuit affirmed the district court's summary judgment order on the basis that Richard and Mari had "failed to raise a genuine issue of material fact." *Wong v. Anzai*, 97 Fed. Appx. 214 (9th Cir.2004) (non-precedential memorandum).

### D. *The Instant Action*

On October 14, 2002, the Wongs filed their complaint in the instant action. The complaint alleged that Defendants had maliciously prosecuted: (1) Richard and Mari as defendants, and Kathleen as an unindicted co-conspirator, in Cr. No. 99–0678; (2) Richard in Cr. No. 99–2417; and (3) Richard in Cr.

No. 01–1–0918. Specifically, the complaint, which was essentially an updated version of the federal complaint in terms of factual allegations, alleged in pertinent part as follows:

14. Since 1993 up to and until recently [Richard] served as a Trustee of the [Bishop Estate].

15. On or about August 7, 1998[,] Special Master Colbert Matsumoto filed the Master's Consolidated Report on the One Hundred Ninth, One Hundred Tenth, and One Hundred Eleventh Annual Account of the Trustees in the Probate Court of the First Circuit Court, State of Hawai'i, in the Matter of the Estate of Bernice P. Bishop, Deceased, Equity No. 2048.

16. On or about September 9, 1998[,] Defendant Bronster filed the Attorney General's Response to the Master's Consolidated Report and requested the interim removal of all of the [Bishop Estate] Trustees who are found to be responsible for alleged breaches of trust.

17. On or about September 10, 1998, Defendant Bronster, in her capacity as Attorney General for the State of Hawai'i, filed a petition in the Probate Court ... specifically alleging kickbacks and other financial improprieties and seeking the removal of all five [Bishop Estate] Trustees, *inter alia.*

18. As relating to [Richard], Defendant Bronster alleged in the State Probate Court that the [Bishop Estate's] decision, in 1995, to sell a leased fee interest in the Kalele Kai Condominium project to One Keahole Partners was a "sweetheart deal," was not in the best interest of [the Bishop Estate], and was based solely on the relationship between [Richard] and his brother-in-law, Jeffrey Stone, who was a principal in one of the entities purchasing the interest in Kalele Kai Condominium.

19. Defendant Bronster further alleged that in return for the aforementioned "sweetheart deal," Jeffrey Stone purchased [Richard and Mari's] condominium at an inflated price and sold them a house on preferential and/or discounted terms.

. . . .

21. [The Wongs] are informed and believe, and thereupon allege, that Defendants Keller, Quinn, Goya, Jones, Sellers, Goodenow, Tsukiyama, and certain of the Doe Defendants have worked with and/or for Defendant Bronster in connection with the aforementioned Probate Court proceedings and other matters related thereto.

22. [The Wongs] are informed and believe, and thereupon allege, that during the course of their inquiry into matters relating to [Bishop Estate] the Defendants issued administrative subpoenas to compel testimony and the production of records and documents and thereupon conducted and recorded numerous interviews of witnesses.

21.[10] Based upon the testimony and records obtained through administrative subpoenas the Defendants convened state grand juries first in September, 1998, and again in January, March, and April 1999, to return a criminal indictment against [Richard and Mari] ... and naming his daughter [Kathleen] as an "unindicted co-conspirator" for alleged theft offenses . . . .

22. Defendant Cayetano personally approved a significant financial inducement to a key witness who, in return, provided unreliable and perjured testimony that led to the theft indictment of [the Wongs].

23. Although there is not and never was any evidence to support any criminal indictment of [the Wongs] in Cr. No. 99–0678, the Defendants intentionally, deliberately, and flagrantly misled the state grand jury and repeatedly committed professional misconduct in the grand jury proceedings to obtain an indictment solely for the purpose of using that indictment to their advantage in the aforementioned Probate Court litigation in which the Defendants seek the interim and permanent removal of [Richard]

10. The numbering of the paragraphs in the Wongs' complaint is reprinted as-is.

from his position as a [Bishop Estate] Trustee.

24. In separate proceedings before two state Probate Court judges[,] the Defendants repeatedly cited the indictment of [Richard] by a "neutral" grand jury as a ground for his removal as a [Bishop Estate] Trustee resulting, on May 7, 1999, in [Richard's] interim removal for a period of at least ninety days.

25. On or about May 17, 1999, Defendants Keller, Jones, and Sellers issued and served a subpoena for all of the correspondence, payments and other privileged records of the insurance company that retained counsel to represent [Richard] in the aforementioned criminal proceedings.

26. On or about July 12, 1999, the Circuit Court dismissed the indictment in Criminal No. 99–0678 on the ground that the Defendants' misrepresentations and other actions before the grand jury tainted the proceedings and had the effect of denying [the Wongs] a fair and impartial determination of probable cause, and Defendants appealed (i.e., S.C. No. 22671).

27. On or about December 9, 1999, Defendants induced another grand jury to return a criminal indictment (Criminal No. 99–2417) against [Richard] and his brother-in-law Jeffrey Stone for perjury in connection with the aforementioned theft indictment that had been dismissed (Criminal No. 99–0678).

28. On December 7, 2000, the Circuit Court dismissed the aforementioned indictment in Criminal No. 99–2417 on the ground that the evidence presented to the grand jury was inaccurate, conclusory, and prejudicial and tainted the proceedings to the extent of denying [the Wongs] a fair and impartial determination of probable cause, *inter alia.*

29. On January 5, 2001, Defendants appealed the Circuit Court's dismissal of Counts II and III of the perjury indictment in Criminal No. 99–2417 (i.e., Appeal No. 23984).

30. Prior to any disposition of the aforementioned appeals in Criminal Nos. 99–0678 and 99–2417[,] Defendants indicted [Richard] for a third time on April 19, 2001, in Criminal No. 01–1–0918, charging him with the same offenses—occurring on the same dates and based on the same events—as had been charged in Criminal No. 99–2417.

31. On July 3, 2001, the Circuit Court dismissed the aforementioned indictment in Criminal No. 01–1–0918 on the ground that the Circuit Court had no jurisdiction unless and until the matters already on appeal to the Supreme Court were mandated or remanded back to the Circuit Court, which Defendants appealed (i.e., Appeal No. 24454).

. . . .

35. [The Wongs] are informed and believe, and thereupon allege, that there is not and never was any legal or factual basis for convening any of the grand juries to indict [the Wongs] and that the Defendants acted deliberately, flagrantly, arrogantly, maliciously, and repetitiously in bad faith for impermissible purposes for the purpose of obtaining indictments against [the Wongs].

On December 24, 2002, the Jones Group filed a motion to dismiss the complaint or for summary judgment, arguing that: (1) Richard had released his claims against them in the Settlement Agreement; (2) the Wongs' claims were barred by res judicata because they could and should have been brought in the federal action; (3) the Wongs were collaterally estopped from alleging that Sellers and Jones participated in the criminal proceedings; (4) the statute of limitations barred the claims arising out of the probate proceedings and Cr. No. 99–0678; and (5) Kathleen failed to state a claim. The Cayetano Group substantively joined in the motion.

In addition, the Cayetano Group filed its own motion to dismiss on December 24, 2002, arguing that: (1) the Wongs' claims against them were barred under the Settlement Agreement; (2) the allegation against Cayetano regarding the tax compromise he approved with Frunzi failed both because it was a privileged action authorized by statute and

because the claim was time-barred by the statute of limitations; and (3) the Wongs' claims were barred by collateral estoppel. In support of the motion was, *inter alia*, an affidavit from the Tax Compliance Administrator of the Department of Taxation, State of Hawai'i, averring that the tax compromise with Frunzi was made in the ordinary course and was unrelated to the Bishop Estate proceedings. Both the Cayetano Group and Jones Group motions also referred to, and introduced evidence of, the records and files in the related cases discussed above, and requested that the circuit court take judicial notice of those records and files. The Wongs did not object to Defendants' request that judicial notice of the records and files in the related cases be taken.

The motions came on for joint hearing on March 27 and 31, 2003. With regard to res judicata, the circuit court concluded:

> [T]he Court believes that the general principle of res judicata applies and that is that the res judicata effect of a final federal court judgment, and the Court accepts the prevailing law, being that a final judgment of the federal district court, notwithstanding pending appeals from that final judgment, is such a final judgment within the meaning of the doctrine of res judicata so that the effect of a final federal court judgment applies to all state claims which could have been raised under the pendent jurisdiction of the federal court.
>
> And the fact that there was a window of opportunity, albeit an extremely narrow window of opportunity and one that came up in rather short order after the cause of action for malicious prosecution accrued, the Court believes that there was an opportunity in the federal court and that the state claims for malicious prosecution could have been raised in the federal court action; and for that, and other good cause shown, the Court does believe that the doctrine of res judicata does apply to preclude the claims asserted herein.

As to the Settlement Agreement, the circuit court ruled:

> [T]he Court does believe it precludes claims arising out of the prosecution of the probate matters. The Court does not believe that th[e] settlement agreement applies to claims that arise out of the prosecution of the criminal charges; therefore, the Court, as to claims that are asserted against [the Jones Group], believes that the settlement agreement precludes [Richard] from bringing that action.

Next, on the point of collateral estoppel, the circuit court found:

> As to Judge Town's determination [in Cr. No. 99–2417], the Court does believe that evidence was adduced on the question of whether there was improper rewarding of a witness by the governor and the attorney general prevailing at various times, Ms. Bronster and Mr. Anzai, and Judge Town made a specific finding that there was insufficient evidence to establish improper rewarding of a witness and so that would preclude claims asserted by Richard ... against the former governor, as well as [the Jones Group].
>
> Judge Town also made a finding that the deputy attorneys general did not violate or breach the screening wall that was imposed between the prosecution of the probate case and the criminal case; and, therefore, with regard to the theory against [the Jones Group] that they are also liable for the alleged malicious prosecution of the criminal case because they violated and breached the screening wall, the Court believes that that is also collateral estoppel and further precludes the claims against [the Jones Group].

Finally, the circuit court concluded that the statute of limitations did not bar the action and that Kathleen had failed to state a claim. In effect, the circuit court made five oral conclusions of law: (1) Kathleen failed to state a claim; (2) Richard was collaterally estopped to argue breach of the screening wall between the civil and criminal matters or witness tampering and thus his claims against Cayetano and the Jones Group were barred; (3) res judicata barred all of Richard and Mari's claims; (4) the Settlement Agreement operated as a release of Richard's claims as against the Jones Group; and (5) the statute of limitations did not bar the Wongs' claims.

On May 13, 2003, the circuit court entered a written order granting the Jones Group motion, without conclusions of law, as a motion for summary judgment as against Richard and Mari and as a motion to dismiss as against Kathleen. On May 22, 2003, the circuit court entered a written order granting the Cayetano Group motion. That order stated in relevant part as follows:

[T]he Court has taken judicial notice of matters in the file in related judicial proceedings directly related to this action, including *In the Matter of the Estate of Bernice P. Bishop,* First Circuit Equity No. 2048; *State of Hawai'i v. Richard Sung Hong Wong and Jeffrey R. Stone,* First Circuit Criminal No. 99–2417; *State of Hawai'i v. Richard Wong and Mari Stone Wong,* First Circuit Criminal No. 99–0678; *State of Hawai'i v. Richard Wong,* First Circuit Criminal No. 01–1–0918; and *Wong v. Anzai, et al.,* U.S. District Court (Hawai'i) No. CV 99–00464 ACK, U.S. Court of Appeals for the Ninth Circuit No. 02–16554 [2004 WL 1153703] (*"Wong v. Anzai"*). . . .

The Cayetano Defendants' Motion is brought pursuant to Haw. R. Civ. P. 12(b)(6). Matters outside the pleading[s] have been presented to and not excluded by the Court, and all parties have been given reasonable opportunity to present all material made pertinent by Haw. R. Civ. P. 56. Accordingly[,] the Court treats and disposes of the Motion as a motion for summary judgment under Haw. R. Civ. P. 56.

The Court finds that no charges or criminal complaints were brought against Plaintiff Kathleen Wong, and that she has not stated and cannot state a claim upon which relief can be granted.

The Court finds that Plaintiffs' claims in this case were included in Plaintiffs Richard Wong and Mari Stone Wong's claims asserted in *Wong v. Anzai,* and that Plaintiffs could have[,] but did not[,] file a motion for leave to amend and further assert those claims in the federal district court action. The United States District Court did not refuse or decline to exercise the jurisdiction over such claims that Plaintiffs had invoked under 28 U.S.C. § 1367. The District Court order granting summary judgment in favor of Defendants in that action was entered after all criminal charges against Plaintiffs Richard Wong or Mari Stone Wong were finally dismissed. A judgment was entered in *Wong v. Anzai* and is a final judgment for purposes of applying the doctrine of res judicata. Accordingly, the Court concludes that the claims in this action were asserted and could have been litigated in *Wong v. Anzai,* and therefore the doctrine of res judicata bars the claims of Plaintiffs Richard Wong and Mari Stone Wong against Defendants Anzai, Bronster, Keller, Goya, and Quinn.

Finally, the Court finds that rulings were made by Circuit Court Judge Michael Town in the course of litigation of criminal proceedings against Richard and/or Mari Stone Wong, based on extensive presentations of evidence and argument, and resulting in specific findings that there was no improper reward to a witness in a tax claim compromise recommended by the Tax Department and approved by then-Governor Cayetano as part of his authorities and duties under Hawai'i Revised Statutes chapter 231. Judge Town's findings of fact, conclusions of law, and ruling also determined that the screening wall between the Attorney General's criminal team and civil team was not bre[a]ched, and that the criminal prosecutions of Richard Wong were not improperly motivated. The Court finds that these rulings bar further litigation of the issues resolved and that the doctrine of collateral estoppel bars relitigation of those issues.

In effect, the circuit court's written order contained three substantive conclusions of law: (1) Kathleen had failed to state a claim upon which relief could be granted; (2) Richard and Mari's claims were barred by res judicata because they could and should have been brought in the federal action; and (3) Richard's claims were barred by collateral estoppel because the issue of impropriety of the criminal proceedings and tax claim settlement had already been finally determined in Cr. No. 99–2417.

On February 4, 2005, final judgment disposing of all claims and parties was entered in the circuit court, and the Wongs then filed a timely notice of appeal in this court.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

 A trial court's ruling on a motion to dismiss is reviewed *de novo*. *Bremner v. City & County of Honolulu*, 96 Hawai'i 134, 138, 28 P.3d 350, 354 (App.2001). The court must accept plaintiff's allegations as true and view them in the light most favorable to the plaintiff; dismissal is proper only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." *Dunlea v. Dappen*, 83 Hawai'i 28, 32, 924 P.2d 196, 200 (1996), *overruled on other grounds by Hac v. Univ. of Hawai'i*, 102 Hawai'i 92, 105–06, 73 P.3d 46, 59–60 (2003) (citations omitted). However, as the circuit court here correctly acknowledged, a motion seeking dismissal of a complaint is transformed into a Hawai'i Rules of Civil Procedure (HRCP) Rule 56 motion for summary judgment when the circuit court considers matters outside the pleadings. *Au v. Au*, 63 Haw. 210, 213, 626 P.2d 173, 176 (1981).

### B. Motion for Summary Judgment

 We review the circuit court's grant or denial of summary judgment *de novo*. *Hawaii [sic] Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

> *Id.* (citations and internal quotation marks omitted).

*Coon v. City and County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002) (second alteration in original).

*Kau v. City & County of Honolulu*, 104 Hawai'i 468, 473–74, 92 P.3d 477, 482–83 (2004). This court has further explained the burdens of the moving and non-moving parties on summary judgment as follows:

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.

> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

*French v. Hawaii Pizza Hut, Inc.*, 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004) (quoting *GECC Fin. Corp. v. Jaffarian*, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995)) (emphasis omitted).

## III. *DISCUSSION*

The Wongs argue that the circuit court erred in concluding that Richard and Mari's claims in the instant action are barred by res judicata. For the reasons set forth in Section III.A, we agree with the Wongs and hold that the circuit court erred in its application of res judicata. However, for the reasons set forth below in Sections III.B, C, and D, we hold that the error was harmless because the judgment below is supported on other independent grounds. *See* Hawai'i Revised Statutes (HRS) § 641–2 (1993) ("No judgment, order or decree shall be reversed, amended or modified for any error or defect unless the court is of the opinion that it has injuriously affected the substantial rights of the appellant."). *See also Lee v. Puamana,* 109 Hawai'i 561, 577, 128 P.3d 874, 890 (2006) (holding that this court may sustain a grant of summary judgment upon any independent ground in the record); *Reyes v. Kuboyama,* 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994) (holding that this court "may affirm a grant of summary judgment on any ground appearing in the record, even if the circuit court did not rely on it") (citations omitted).

### A. *The Circuit Court Erred in Concluding that Richard and Mari's Claims Were Barred by Res Judicata.*

Both the Cayetano Group and the Jones Group argue that the final judgment against Richard and Mari in the federal action precludes their claims here, and the circuit court agreed. The Wongs, on the other hand, contend that the circuit court erred in applying res judicata because they did not, and were not required to, bring their instant state law claims for malicious prosecution in the prior federal suit. Based on the following, we agree with the Wongs and hold that the circuit court erred in concluding that Richard and Mari's claims were precluded by res judicata.

### 1. The Preclusive Effect of a Federal Judgment Is Governed By Federal Law.

The doctrine of res judicata, or claim preclusion, is founded in concerns of judicial economy to prevent litigants from bringing successive actions based on the same facts. *Kauhane v. Acutron Co., Inc.,* 71 Haw. 458, 463, 795 P.2d 276, 278–79 (1990). In *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), the United States Supreme Court stated that "no federal textual provision addresses the claim-preclusive effect of a federal-court judgment in a federal-question case, yet we have long held that States cannot give those judgments merely whatever effect they would give their own judgments, but must accord them the effect that this Court prescribes." *Cf. Int'l Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel.,* 68 Haw. 316, 331 n. 17, 713 P.2d 943, 955 n. 17 (1986) ("In a subsequent state court action, the collateral estoppel effect of a federal law ruling in a prior federal court adjudication is a question of federal law." (Citing *Limbach v. Hooven & Allison Co.,* 466 U.S. 353, 361–62, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984))). Because the federal suit was based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, we must apply federal claim preclusion law.

### 2. Under Federal Res Judicata Principles, the Instant Action Would Not Be Barred.

In federal court, there are three elements necessary to establish res judicata: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties." *Headwaters, Inc. v. U.S. Forest Service,* 399 F.3d 1047, 1052 (9th Cir.2005) (quotation marks and citations omitted). Here, there is no dispute that Richard, Mari, Anzai, Bronster, Keller, Goya, Quinn, Jones, and Sellers were all parties to both the federal action and the instant action; thus there is no dispute regarding the third element. Similarly, the second element is met because a final judgment of a federal district court is final for the purposes of res judicata even if an appeal is pending. *Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir.1988). Accordingly, the sole issue is whether there can be said to be "an identity of claims" between the federal action and the instant action.

To determine whether the claims in a subsequent action are the same as those

presented in a prior action, a federal court asks:

(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important.

*Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201–02 (9th Cir.1982) (internal citation omitted). With respect to the fourth and most important "same transactional nucleus of facts" criterion, "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims *could have been brought* in the earlier action." *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064, 1078 (9th Cir.2003) (emphasis added). *Accord Kauhane,* 71 Haw. at 463, 795 P.2d at 278. Moreover, "a plaintiff with a claim supported by both state and federal law may not bring separate actions on each ground; the first action precludes the second if the first court had jurisdiction to adjudicate both grounds." *Los Angeles Branch NAACP v. Los Angeles Unified School Dist.,* 750 F.2d 731, 739 (9th Cir.1984) (citations omitted). Here, the federal district court had supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

■■■ On the other hand, it is also true that res judicata does not bar litigation of matters not within the scope of the first action. *Id.*

The scope of the litigation is framed by the complaint *at the time it is filed.* The rule that a judgment is conclusive as to every matter that might have been litigated *does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.* Plaintiffs may bring events occurring after the filing of the complaint into the scope of the litigation by filing a supplemental complaint with leave of court, but *there is no requirement that plaintiffs do so.*

*Id.* (emphases added; internal quotation marks, footnote, and citations omitted). *Accord Bolte v. AITS, Inc.,* 60 Haw. 58, 60–62, 587 P.2d 810, 813–14 (1978) (finding res judicata inapplicable in a later suit where the cause of action did not accrue until after the complaint in a prior action was filed). In other words, claims arising after the complaint is filed are not barred by res judicata. *See Los Angeles Branch NAACP,* 750 F.2d at 739 n. 9 ("We decline to impose a potentially unworkable requirement that every claim arising prior to entry of a final decree must be brought into the pending litigation or [be] lost."). Accordingly, the question becomes whether the instant claims for malicious prosecution were within the scope of the federal action at the time the complaint was filed.

■■■ We begin by setting out the framework of a claim for malicious prosecution. As we noted in *Reed v. City & County of Honolulu,* there are three essential elements: (1) the prior proceedings must have been terminated in the plaintiff's favor; (2) the prior proceedings must have been initiated without probable cause; and (3) the prior proceedings must have been initiated with malice. 76 Hawai'i 219, 230, 873 P.2d 98, 109 (1994). With respect to the first element, termination of the prosecution must be "in such a manner that it cannot be revived." [11] *Wong v. Panis,* 7 Haw.App. 414,

11. This court has never squarely ruled on what a final termination requires, and there is some dispute whether the pendency of an appeal in an allegedly malicious prosecution precludes maintenance of a subsequent action for malicious prosecution. However, the majority of courts appears to agree that the cause of action does not accrue until the judgment in the prior action is final on appeal or the time for appeal expires. *See Smith v. Hurd,* 699 F.Supp. 1433, 1435–36 (D.Haw.1988) (applying Hawai'i law and predicting, based on the "it cannot be revived" language, the Restatement of Torts view, the weight of authority in other jurisdictions, and the interests of judicial economy, that if this court were to rule on the issue, it "would require exhaustion of the appellate process before commencement of a malicious prosecution action"). We concur, and now formally adopt the rule that a cause of action for malicious prosecution does not accrue (*i.e.,* there is no favorable termination) until (1) the prosecution has been finally and favorably decided on appeal, or (2) it has

419, 772 P.2d 695, 699 (1989), *rev'd on other grounds by Hac v. Univ. of Hawai'i*, 102 Hawai'i 92, 73 P.3d 46 (2003) (citation and internal quotation marks omitted). Here, the federal complaint was filed on June 28, 1999. This was before the December 1999 (Cr. No. 99–2417) and April 2001 (Cr. No. 01–1–0918) indictments of Richard, and before any of the three indictments were finally terminated on appeal in 2002 in favor of Richard and/or Mari. Because no cause of action had accrued as of the June 28, 1999 filing date of their federal complaint, Richard and Mari could not have brought a state law claim for malicious prosecution therein.

 Defendants nevertheless argue that the foregoing analysis is inapplicable because even if Richard and Mari's state law malicious prosecution claims were not within the scope of the complaint as originally filed, and even if Richard and Mari were not required to amend their complaint, they in effect voluntarily did so. They contend that Richard and Mari's briefs and supplemental memorandum in the federal action, which contained allegations of "malicious prosecution" and included subsequent factual developments, effectively amended the complaint such that their state law malicious prosecution claims were actually raised and adjudicated in the federal action. However, the well-settled rule in federal court is that a plaintiff may not amend his or her complaint by way of briefs or memoranda. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984). Even more tellingly, in the federal action, the district court granted summary judgment against Richard and Mari on the basis of absolute immunity, and absolute immunity is not a defense under Hawai'i law in an action for malicious prosecution. *Reed*, 76 Hawai'i at 226, 873 P.2d at 105. As a result, it is clear that the federal court did not rule upon any state law claims for malicious prosecution. Accordingly, the circuit court erred in concluding that Richard and Mari's claims were barred by res judicata.

**B. The Circuit Court's Judgment Must Be Affirmed to the Extent That the Wongs Do Not Challenge Conclusions of Law That Form Separate and Independent Bases for the Judgment.**

 Even though we have found error, we may, as we noted earlier, nevertheless sustain the circuit court's grant of summary judgment on any ground supported by the record, whether relied on by the circuit court or not. We first examine the grounds relied on below and unchallenged on appeal.

As set forth above, the circuit court made several conclusions of law, having different effect as applied to each plaintiff and defendant, but the Wongs challenge only one conclusion supporting one part of the judgment (*i.e.*, the conclusion that Richard and Mari's claims are barred by res judicata). Because the circuit court's remaining, unchallenged conclusions of law are binding upon us, *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 125, 839 P.2d 10, 31 (1992), we now decide the effect of those conclusions in order to determine those parties against whom or in favor of whom the judgment below is separately and independently supported.

**1. The Circuit Court's Judgment in Favor of All Defendants as Against Kathleen Must Be Affirmed Because the Wongs Do Not Challenge the Conclusion of Law That She Failed to State a Claim upon Which Relief Could Be Granted, Which Conclusion Forms a Separate and Independent Basis for the Judgment.**

As set forth above, the circuit court, in its May 22, 2003 order granting the Cayetano Group's motion, concluded that "no charges or criminal proceedings were ever made against Plaintiff Kathleen Wong, and that she has not stated and cannot state a claim upon which relief can be granted." Defendants point out that in challenging only the circuit court's res judicata conclusion, the Wongs make no assignment of error as to this conclusion. Because the circuit court's dismissal of Kathleen for failure to state a claim is a separate and independent basis for the judgment as against Kathleen, we agree

been finally and favorably decided in the trial court and the time for appeal has passed.

that the judgment in favor of all Defendants must be affirmed as against Kathleen.

## 2. The Circuit Court's Judgment in Favor of the Jones Group as Against Richard Must Be Affirmed Because the Wongs Do Not Challenge the Conclusion of Law That the Settlement Agreement Released Richard's Claims Against Them, Which Conclusion Forms a Separate and Independent Basis for the Judgment.

Also as set forth above, the circuit court in its March 31, 2003 oral ruling concluded that "as to claims that are asserted against [the Jones Group], ... the [S]ettlement [A]greement precludes [Richard] from bringing that action." Again, as the Jones Group points out, the Wongs do not challenge this conclusion. Because the circuit court's conclusion is a separate and independent basis for the judgment as against Richard and in favor of the Jones Group, the judgment against Richard and in favor of the Jones Group must be affirmed on that basis.

## 3. The Circuit Court's Judgment in Favor of the Jones Group and Cayetano as Against Richard Must Be Affirmed Because the Wongs Do Not Challenge the Conclusion of Law That Richard's Claims Are Barred by Collateral Estoppel Based on the Findings in Cr. No. 99–2417, Which Conclusion Forms a Separate and Independent Basis for the Judgment.

Finally, the circuit court concluded in its written order that collateral estoppel barred the relitigation of issues resolved in Cr. No. 99–2417:

Finally, the Court finds that rulings were made by Circuit Court Judge Michael Town in the course of litigation of criminal proceedings against Richard and/or Mari Stone Wong, based on extensive presentations of evidence and argument, and resulting in specific findings that there was no improper reward to a witness in a tax claim compromise recommended by the Tax Department and approved by then-Governor Cayetano as part of his authorities and duties under Hawai'i Revised Statutes chapter 231. Judge Town's findings of fact, conclusions of law, and ruling also determined that the screening wall between the Attorney General's criminal team and civil team was not bre[a]ched, and that the criminal prosecutions of Richard Wong were not improperly motivated. The Court finds that these rulings bar further litigation of the issues resolved and that the doctrine of collateral estoppel bars relitigation of those issues.

The Jones Group notes that this conclusion, too, is unchallenged by the Wongs. Before giving it effect here, however, we must first construe what it means, for the language is somewhat ambiguous. In this endeavor, we rely on the circuit court's oral ruling for assistance. *See Kagoshima v. Kaimi*, 38 Haw. 430, 431 (1949) (construing the trial court's written decision to be in substance the same as its oral ruling). First, because only Richard was a party to Cr. No. 99–2417 and because in its oral ruling on collateral estoppel the circuit court referred only to Richard, we interpret the phrase "Richard and/or Mari" to mean "Richard or Mari," and thus, in the context of collateral estoppel, Richard only. *See Dorrance v. Lee*, 90 Hawai'i 143, 149, 976 P.2d 904, 910 (1999) (holding that the party against whom collateral estoppel is asserted must have been a party, or in privity with a party, to the prior action). Second, we note that the "issues resolved" by the December 29, 2000 order in Cr. No. 99–2417 cannot be construed to include matters related to the third criminal indictment, which was not secured until four months later, in April 2001.

After parsing the circuit court's conclusion in the foregoing manner, we are left with the ruling that Richard is collaterally estopped from asserting that: (1) the tax compromise with Frunzi was improper; (2) the screening wall between the civil and criminal teams was breached; and (3) the prosecutions in Cr. Nos. 99–0678 and 99–2417 were improperly motivated. The net effect of this unchallenged conclusion, according to the circuit court's oral ruling, is that all of Richard's claims against the Jones Group and Cayetano are barred. Furthermore, we note that Richard's claims against the remaining De-

fendants would survive only with respect to allegations arising out of the third indictment (Cr. No. 01–1–0918). Because the circuit court's unchallenged collateral estoppel conclusion is a separate and independent basis for the judgment as against Richard and in favor of the Jones Group and Cayetano, the judgment against Richard and in favor of those parties must be affirmed on that basis.

C. *The Circuit Court Judgment in Favor of All Defendants Except Cayetano and as Against Richard Must Be Affirmed Because Richard Released His Claims Against Them Pursuant to the Settlement Agreement.*

■ Having considered independent grounds supporting summary judgment that were relied on by the circuit court, we now move to grounds not relied on by the circuit court. The Cayetano Group argues that the judgment below should be affirmed as against Richard and in favor of all Defendants on the ground that Richard released his claims when he entered into the Settlement Agreement. As set forth above, the circuit court concluded that the Settlement Agreement did not constitute a release of all of Richard's claims arising out of the criminal proceedings. For the reasons set forth below, we hold that the circuit court erred in this regard and that Richard released his claims against all Defendants except Cayetano when he entered into the Settlement Agreement.

■ The question presented is whether the scope of the release in the Settlement Agreement includes the instant claims for malicious prosecution. We address it as a question of law because the construction and interpretation of settlement agreements, which are simply a species of contract, is generally a matter for the court. *See State Farm Fire & Cas. Co. v. Pacific Rent–All, Inc.*, 90 Hawai'i 315, 323–24, 978 P.2d 753, 761–62 (1999) (construing a settlement agreement under ordinary contract principles); *Hanagami v. China Airlines, Ltd.*, 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984) (holding that the construction and legal effect of a contract is a question of law). Furthermore, "[w]hen the terms of a contract are definite

and unambiguous there is no room for interpretation." *Hanagami*, 67 Haw. at 364, 688 P.2d at 1144 (citation omitted). Here, we are left with no room for interpretation because the language of the Settlement Agreement is unambiguously sweeping and broad. The agreement states that it releases all claims, "whether *known or unknown*, arisen, arising or *to arise in the future* and which concern or relate, *directly or indirectly*, to any or all of the following: ... [a]ll claims relating to, concerning, involving or arising out of the Surcharge Claims." Because the agreement clearly releases unknown and unarisen claims, whether any or all of Richard's claims for malicious prosecution were known or arisen as of October 12, 2000 is irrelevant. Furthermore, we do not doubt that the malicious prosecution claims here are directly or indirectly related to the surcharge claims in the probate case.

■ This last point is not a difficult one because the Wongs themselves concede a direct relationship between the probate proceedings and the instant claims. *See Int'l Bhd. of Elec. Workers, Local 1357*, 68 Haw. at 320 n. 2, 713 P.2d at 949 n. 2 (noting that a party's factual allegation in a complaint is a judicial admission which binds the party). In particular, paragraph 23 of the complaint alleges:

> Although there is not and never was any evidence to support any criminal indictment of [the Wongs] in Cr. No. 99–0678, the Defendants intentionally, deliberately and flagrantly misled the state grand jury and repeatedly committed professional misconduct in the grand jury proceedings *to obtain an indictment solely for the purpose of using that indictment to their advantage in the aforementioned Probate Court litigation* in which the Defendants seek the interim and permanent removal of [Richard] from his position as a [Bishop Estate] Trustee.

(Emphasis added.) In other words, the Wongs concede that the allegedly malicious criminal prosecutions relate to the surcharge claims in the probate action in that they were instituted to leverage a favorable result in the probate action. Even more telling is that both the criminal proceedings and civil pro-

bate proceedings concerned the same subject matter.[12] That is to say, the alleged sweetheart deal regarding Kalele Kai and surrounding allegations of financial improprieties in the probate case also form the subject of the first criminal indictment for theft (and the perjury charges in the second and third indictments arise out of the proceedings in the first indictment). Accordingly, we hold that Richard, by entering into the Settlement Agreement, released any malicious prosecution claims against the attorney general and his or her Representatives (*i.e.*, agents, attorneys, and employees). Because there is no dispute that, with the exception of Cayetano,[13] each of the Defendants in this action were either the attorney general, or a Representative of the attorney general, the judgment below must be affirmed in their favor and against Richard.

D. *The Judgment as Against Mari Must Be Affirmed Because She Failed to Raise a Genuine Issue of Material Fact.*

▮ Having found sufficient basis in the record to support the judgment in favor of all Defendants against Richard and Kathleen, and the judgment in favor of Cayetano against all of the Wongs, we are left to consider whether there is a basis on which to sustain the judgment in favor of the remaining Defendants against Mari. Upon reviewing the record, we hold that the judgment against Mari must be affirmed on the basis

that she failed to raise a genuine issue of material fact for trial.

We begin by restating the three elements of a malicious prosecution claim: (1) the prior proceedings must have been terminated in the plaintiff's favor; (2) the prior proceedings must have been initiated without probable cause; and (3) the prior proceedings must have been initiated with malice. *Reed*, 76 Hawai'i at 230, 873 P.2d at 109. We first note that: (1) there is no dispute that the proceedings in Cr. No. 99–0678 were terminated in Mari's favor,[14] and (2) neither side points to any evidence in the record as to whether the State had probable cause to charge Mari with hindering prosecution or conspiracy. *See Wong*, 97 Hawai'i at 526 n. 10, 40 P.3d at 928 n. 10 (withholding judgment on whether the prosecution in Cr. No. 99–0678 was initiated based on probable cause). Accordingly, the key issue is the element of malice.

▮ As the Intermediate Court of Appeals has explained at length, "[t]he question of whether a summary judgment should [be] granted on the basis of a lack of malice in filing the prior lawsuit is ... [a] difficult question." *Brodie v. Hawai'i Auto. Retail Gasoline Dealers Ass'n*, 2 Haw.App. 316, 319, 631 P.2d 600, 603 (1981), *rev'd on other grounds*, 65 Haw. 598, 655 P.2d 863 (1982). We have previously stated that, at trial, a plaintiff has the burden of proving malice by

12. In response to the question of why, then, did the Settlement Agreement not release Richard from all criminal liability, the simplest answer is that the State was not a party to the probate proceedings or the agreement, and thus could not be said to have released its claims. *Compare Application of Sherretz*, 39 Haw. 431, 433 (1952) (observing that criminal actions may be prosecuted only in the name of the sovereign [*i.e.*, State of Hawai'i] on behalf of the public as a whole) *with In re Bishop Estate*, 36 Haw. 403, 416 (1943) (observing that a surcharge action based on a master's report is brought, not in the name of the state, but by the attorney general in his or her role as parens patriae of charitable trusts such as the Bishop Estate).

13. It cannot be said that Cayetano was either the attorney general or a Representative of the attorney general within the meaning of the Settlement Agreement. However, with respect to Cayetano, the judgment in his favor as against each of Richard, Mari, and Kathleen must be affirmed on

the independent basis that the Wongs failed to raise a genuine issue of material fact for trial. The only allegation against Cayetano in the complaint is that, by improperly entering into a compromise of Frunzi's tax liabilities, he induced Frunzi to testify favorably for the State in the grand jury proceedings. However, after the Cayetano Group produced the affidavit showing that there was no impropriety in the tax settlement and the findings in Cr. No. 99–2417 to the same effect, the burden fell to the Wongs to demonstrate evidence of "specific facts," as opposed to general allegations, to dispute that evidence. *French*, 105 Hawai'i at 470, 99 P.3d at 1054. Because they failed to do so, the Wongs' claims as against Cayetano cannot survive summary judgment.

14. Because Mari was prosecuted only in Cr. No. 99–0678, we exclude consideration of any allegations regarding the two later indictments that were obtained only against Richard.

clear and convincing evidence. *Orso v. City & County of Honolulu,* 56 Haw. 241, 247–48, 534 P.2d 489, 493 (1975), *rev'd on other grounds by Kahale v. City & County of Honolulu,* 104 Hawai'i 341, 90 P.3d 233 (2004). However, we have also acknowledged that "it is true that malice is seldom the subject of a confession by the wrongdoer. It usually must be proved by inferences from other evidence." *Myers v. Cohen,* 67 Haw. 389, 397, 688 P.2d 1145, 1151 (1984). *See also Brodie,* 2 Haw.App. at 322, 631 P.2d at 605 (holding that an inference of malice may be supported by direct or circumstantial evidence).

On summary judgment, the burden is on the moving party "to show the absence of any genuine issue as to all material facts." *French,* 105 Hawai'i at 470, 99 P.3d at 1054. To meet this burden and demonstrate the absence of any genuine issue as to whether Mari was prosecuted with malice, Defendants pointed to the files and records of related cases—in particular the findings of the circuit court in Cr. No. 99–2417—of which the circuit court took judicial notice. As set forth above, the circuit court in Cr. No. 99–2417 found, *inter alia,* that "[t]here was no evidence to show that . . . the . . . indictment [in Cr. No. 99–0678] . . . was improperly motivated." Although this finding has no preclusive effect as against Mari, it is nevertheless a judicially noticed fact sufficient to meet Defendants' burden of production on a motion for summary judgment. *See Application of Pioneer Mill Co.,* 53 Haw. 496, 497 n. 1, 497 P.2d 549, 551 n. 1 (1972) (holding that a judicially noticed fact is taken as true unless rebutted); *Hawaii Hous. Auth. v. Ajimine,* 39 Haw. 543, 551 (1952) (holding that judicially noticed facts are sufficient to meet a movant's burden of production and support a finding unless contradicted by other evidence).

At this point, the burden shifted to Mari to demonstrate evidence of "specific facts," as opposed to general allegations, to dispute or contradict Defendants' evidence that there was no improper motive behind the prosecution. *French,* 105 Hawai'i at 470, 99 P.3d at 1054. As the ICA stated in *Brodie:*

[T]here must come a time when the plaintiff has to show facts upon which he contends that malice existed. . . . [W]e think it appropriate to give defendants the power to require plaintiffs to make such a showing pre-trial in response to defendants' motion for summary judgment. If he is unprepared to do so at the time of the filing of a motion for summary judgment, then under Rule 56(f), HRCP,[15] he can file an affidavit showing why he cannot then do so and obtain an extension for discovery or the obtaining of affidavits or such other relief as is just.

*Brodie,* 2 Haw.App. at 323, 631 P.2d at 605. However, rather than either: (1) adducing evidence of "specific facts" to dispute Defendants' reliance on the judicially noticed fact that there was no improper motive behind her prosecution, or (2) filing an affidavit to show why she could not then do so and seeking an extension for discovery or the obtaining of affidavits to dispute the judicially noticed fact, Mari relied on the conclusory allegations of the complaint. She thus failed to meet her burden to raise a genuine issue of material fact as to whether her prosecution was initiated with malice, which is an essential element of her malicious prosecution claim. *See Reed,* 76 Hawai'i at 225, 873 P.2d at 104 ("Bare allegations or factually unsupported conclusions are insufficient to raise a genuine issue of material fact, and therefore, insufficient to reverse a grant of summary judgment." (Citations omitted.)). Accordingly, the judgment below as against Mari and in favor of all Defendants must be affirmed on that basis.

### IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's February 4, 2005 final judgment.

---

**15.** HRCP Rule 56(f) (2000) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.